John A. MURINCSAK, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–222.

United States Court of Veterans Appeals.

Argued Oct. 21, 1991.
Decided April 24, 1992.

William G. Smith, Los Angeles, Cal., for appellant.

Stephen A. Bergquist, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before KRAMER, MANKIN, and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

John A. Murincsak appeals from a December 5, 1989, Board of Veterans' Appeals (BVA or Board) decision, which denied entitlement to a total disability rating based on individual unemployability due to service-connected disability. Because the BVA decision contains errors of law, we vacate the BVA decision and remand the case to the BVA with specific instructions to proceed in a manner consistent with this opinion.

## I. BACKGROUND

The veteran, John A. Murincsak, served on active military duty in the United States Air Force from January 14, 1964, to January 8, 1968. R. at 1. During service, appellant was treated for anxiety and nervousness on several occasions. Appellant filed his original claim for service connection for schizophrenia in February 1971. After intensive examination, the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (VARO)

in Baltimore, Maryland granted appellant a 100% service-connected disability rating for schizophrenic reaction, undifferentiated type, on January 11, 1972. R. at 2–3.

On June 2, 1972, a VA medical examiner reported a diagnosis of "schizophrenia, chronic, undifferentiated. He is actively psychotic." R. at 4. The veteran was hospitalized for this condition from August 18, 1972, to October 4, 1972. R. at 5. He moved from his sister's home in Maryland to California in 1975, and apparently began treatment at the VA Medical Center (VAMC) in Long Beach, California, in 1976, in addition to private therapy. R. at 6. He was again hospitalized from March 12, 1979, to April 30, 1979, at the VAMC in Long Beach. R. at 7–8.

A Mental Status Examination was performed on January 17, 1980, which revealed: "The veteran is acutely psychotic during the interview and his judgment is highly impair[ed]. He has no ability to concentrate and is unemployable at the present time." R. at 9. The final diagnosis was schizophrenia, chronic undifferentiated type. On February 6, 1981, a Compensation and Pension Report concluded with a diagnosis of "Schizophrenia, chronic, undifferentiated type, competent," and the statement, "It is questionable whether this veteran can hold on to any type of employment." R. at 11. Apparently based on the February examination, on May 7, 1981, the VARO in Los Angeles, California, reduced appellant's disability rating for schizophrenic reaction, undifferentiated type, from 100% to 70% effective from August 1, 1981. The rating board concluded: "Veteran is not shown to be unemployable primarily because of [service-connected] condition." R. at 12.

A rating decision of November 17, 1982, indicates that appellant was hospitalized for his service-connected condition effective from September 30, 1982, to November 3, 1982, and was consequently awarded a 100% disability rating from September 30, 1982, and then reduced back to a 70% disability rating effective December 1, 1982. R. at 15. Appellant was again hospitalized for several days in November 1985, and

then returned to the board and care home where he had been living. R. at 17. On December 4, 1986, the diagnosis of schizophrenia, chronic, undifferentiated type, was continued. R. at 18.

On July 14, 1987, the veteran filed a claim with the VA for an increased rating for service-connected schizophrenia, which was then rated at 70%. The veteran mentioned that he was unemployable and seeking weekly treatment at the VAMC in Long Beach. R. at 19. Only the medical records from February 18, 1987, to February 19, 1988, were reviewed by the VARO in appellant's reopened claim. R. at 20–70. A rating decision of March 11, 1988, continued the 70% disability rating for service-connected schizophrenic reaction, chronic undifferentiated type, from December 1, 1982, and denied service connection for residuals of exposure to Agent Orange. R. at 73–74. In May 1988, the veteran was admitted to the VAMC hospital for several days for his schizophrenic condition. R. at 75. The VARO confirmed the previous rating decision on August 24, 1988. R. at 76.

On January 11, 1989, the veteran filed another application for increased compensation based on unemployability, stating that the date of his last full-time employment was in 1974, when he was fired because of psychiatric problems from his job as a police officer. He concurrently filed his Notice of Disagreement with the August 1988 rating decision, as it did not consider unemployability. R. at 77–79. On January 30, 1989, the VARO in Los Angeles found that the veteran's "[service-connected] schizophrenia is not shown to be of such severity as to produce unemployability." R. at 80.

A Compensation and Pension Examination performed on February 13, 1989, noted that appellant was living in a board and care home and was unemployed, in addition to the following:

The patient is alert and oriented times three. He is somewhat disheveled, wearing a dirty shirt and walking with a cane. Speech is loud and hoarse. He complains of auditory hallucinations including command auditory hallucinations. Visual

hallucinations, paranoid ideation, poor impulse control. He also complains of feelings of unreality as if he is another person at times. He states that he hears voices in Hungarian telling him to do various things. He believes that other people know what his thoughts are. He sees auras, halos and blood coming out of other people's heads.... The patient is somewhat disheveled. His affect is somewhat irritable and angry. Judgment and insight seem to be impaired.

ASSESSMENT: AXIS I: Chronic undifferentiated schizophrenia.
AXIS II: Deferred.
AXIS III: Arthritis, hypertension.

R. at 87. On March 6, 1989, the veteran appealed the January 1989 rating decision to the BVA. On March 10, 1989, the VARO confirmed the 70% disability rating for service-connected schizophrenia. R. at 92. The veteran, his brother, a friend, and his service representative personally appeared before a member of the rating board at a hearing held in Los Angeles on May 16, 1989. R. at 97–108. On June 6, 1989, the hearing officer concluded: "The symptomatology is consistent with the currently assigned 70% evaluation. Accordingly, prior ratings are affirmed. Consideration for individual unemployability is not appropriate in this case as the veteran's sole service-connected disability is that of his psychiatric condition." R. at 110. On December 9, 1989, the Board denied entitlement to a total rating by reason of individual unemployability due to a service-connected psychiatric disorder. *John A. Murincsak*, BVA 89–05877 (Dec. 5, 1989). The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

Appellant first claims eligibility for a 100% schedular disability rating for schizophrenia, undifferentiated type, under 38 C.F.R. § 4.132, Diagnostic Code (DC) 9204 (1991). Appellant also claims entitlement to a total disability rating for compensation based on individual unemployability under 38 C.F.R. § 4.16(c) (1991). Murincsak also seeks reversal of the December 5, 1989, BVA decision, because he contends that the BVA failed to comply with its statutory

and regulatory duties to assist him in development of his claim and that it failed to apply pertinent laws and regulations in adjudicating his claim. The Secretary of Veterans Affairs (Secretary), in his motion for remand, conceded that the BVA had failed to present reasons or bases for its findings and conclusions on every material issue of fact and law presented on the record. The Court agrees with the Secretary that the BVA failed to address the credibility and probative weight of the hearing testimony and psychiatric examination findings, failed to consider the unemployability issue in light of 38 C.F.R. § 4.16(c), and did not elaborate on its application of the benefit-of-the-doubt doctrine in the context of the facts in this case. The Court finds, for these and additional reasons discussed in parts II.A., II.C.1., II.C.2., *infra*, that a remand of the case is appropriate under the circumstances. The Court finds that the BVA decision on appeal here is fraught with error and must be vacated.

### A. Legal Error

Appellant argues that the BVA and the Regional Office failed to follow several regulatory provisions in deciding his claim. The Court has consistently held that "the BVA is not free to ignore its own regulations." *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). "Once a veteran raises a well grounded claim to which a regulation could reasonably apply, the BVA must apply the regulation or give the reasons [or] bases explaining why it is not applicable." *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991) (quoting *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990)). *See also Peyton v. Derwinski*, 1 Vet.App. 282, 286–87 (1991).

The Court finds that appellant presented a well-grounded claim for both a schedular total disability rating and one premised on individual unemployability based upon his repeated contentions that he has been unemployed since 1970 or 1974 (he asserts that he cannot remember the exact year due to his service-connected psychosis), has been hospitalized numerous times over the years precluding employment, attends weekly group therapy, and lives in a board and care home because he cannot care for

himself, much less obtain substantially gainful employment. A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990).

While the BVA states the applicability of 38 C.F.R. § 4.16, it makes no mention of or reference to the specific provisions of 38 C.F.R. § 4.16(c), which is clearly pertinent to appellant's claim. Section 4.16(c) states:

The provisions of paragraph (a) of this section are not for application in cases in which the only compensable service-connected disability is a mental disorder assigned *a 70 percent evaluation, and such mental disorder precludes a veteran from securing or following a substantially gainful occupation. In such cases, the mental disorder shall be assigned a 100 percent schedular evaluation under the appropriate diagnostic code.*

38 C.F.R. § 4.16(c) (1991) (emphasis added). The relevant portion of section 4.16(a) referenced in section 4.16(c) is as follows:

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: *Provided That,* if there is only one such disability, this disability shall be ratable at 60 percent or more,....

38 C.F.R. § 4.16(a) (1991). The General Rating Formula for Psychotic Disorders, including schizophrenia, differentiates between 100% and 70% disabilities as follows:

Active psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce total social and industrial inadaptability ............... 100

With lesser symptomatology such as to produce severe impairment of social and industrial adaptability ........................... 70

38 C.F.R. § 4.132, DC 9204 (1991). Since appellant presented a well-grounded claim,

the BVA was obligated to acknowledge and consider the applicability of the General Rating Formula and section 4.16(c).

█ In the BVA's denial of appellant's claim for a total disability rating based on individual unemployability, it continued the 70% disability rating that had been continued by the rating decision of June 6, 1989. The VARO hearing officer concluded his decision by stating that "the symptomatology is consistent with the currently assigned 70% evaluation. Accordingly, prior ratings are affirmed. Consideration for individual unemployability is not appropriate in this case as the veteran's sole service-connected disability is that of his psychiatric condition." R. at 110. This conclusion contains legal error in its misstatement of the law. It is manifest from this erroneous conclusion that the hearing officer ignored and failed to apply 38 C.F.R. § 4.16(c). This regulation, which has no predecessor, became effective March 1, 1989, after the reopening of appellant's claim, but before the June 6, 1989, hearing officer's decision, and before the BVA decision on appeal. Where, as here, there was evidence of record that appellant has been continually unemployed since 1970 or 1974, the BVA clearly erred by failing to consider this provision which, when applied, dictates a 100% schedular rating for a claimant whose 70% service-connected schizophrenia prevents him from engaging in substantially gainful employment. *See Karnas*, 1 Vet. App. at 311–13.

In response to a question posed at oral argument, counsel for the Secretary conceded that there is no evidence in the record to show that the veteran is actually employable. "Where a VA regulation is made potentially applicable through the assertions and issues raised in the record, the Board's refusal to acknowledge and consider that regulation is 'arbitrary, capricious, an abuse of discretion,' and 'not in accordance with the law,' and must be set aside as such." *Schafrath*, 1 Vet.App. at 593; *see* 38 U.S.C. § 7061(a)(3) (formerly § 4061(a)(3)); *Payne*, 1 Vet.App. at 87.

Under these circumstances, the case must be remanded for the BVA to evaluate appellant's claim of individual unemployability under section 4.16(c) and for it to provide a clear statement of its decision on that claim, with articulation of the reasons or bases therefor. *See Schafrath,* 1 Vet.App. at 593.

## B. Administrative Error

■ The December 5, 1989, BVA decision confirmed the June 1989 rating decision, which affirmed all prior rating decisions based upon the 70% disability rating, which had been in effect since a 1981 rating reduction from a 100% disability rating. The May 7, 1981, rating decision is a final and binding agency decision not "subject to revision on the same factual basis except by duly constituted appellate authorities." 56 Fed.Reg. 65,846 (1991) (to be codified as amended at 38 C.F.R. § 3.104(a)) (effective Jan. 21, 1992). The exception to finality is found in section 3.105 which states that, "Previous determinations which are final and binding, including decisions of service connection, [and] degree of disability, ..., will be accepted as correct in the absence of clear and unmistakable error." 56 Fed. Reg. 65,846 (1991) (to be codified as amended at 38 C.F.R. § 3.105(a)) (effective Jan. 21, 1992).

The issue of clear and unmistakable error was raised by appellant's contention that the VARO committed error in 1981 when it unlawfully reduced appellant's disability rating for service-connected schizophrenia from 100% to 70% effective August 1, 1981. Br. of Appellant at 23. Based upon one medical examination and apparently without applying VA regulations, 38 C.F.R. §§ 3.343 and 3.344, the VARO reduced appellant's 100% disability rating, which had been in existence since 1971, to 70%. These two regulations were in existence at the time of this rating decision; accordingly, the VARO was required to apply them accurately to the facts of the veteran's claim.

Section 3.343(a) addresses the continuance and reduction in total disability ratings and states in relevant part:

(a) *General.* Total disability ratings when warranted by the severity of the condition ... will not be reduced, in the absence of clear error, without examination showing *material improvement* in physical or mental condition. Examination reports showing material improvement must be *evaluated in conjunction with all the facts of record,* and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest....

38 C.F.R. § 3.343(a) (1991) (emphasis added). In reducing appellant's total disability rating, the VA failed to document, through an examination as required by section 3.343(a), that the appellant had materially improved, based on all the facts of record and under ordinary conditions of life, from the date of the last examination. *See Karnas,* 1 Vet.App. at 310–11.

A comparison of the examination report of February 6, 1981, which is the basis of the first reduction, with the immediately previous examination report of January 17, 1980, which was the basis for continuing appellant's 100% disability rating, shows no indication of any material improvement. The final diagnosis at the end of both of these reports is identical: "schizophrenia, chronic, undifferentiated type, competent" for VA purposes. These two examination reports do not demonstrate material improvement in either appellant's "social and industrial inadaptability" within the meaning of 38 C.F.R. § 4.132, DC 9204, or "improvement under the ordinary conditions of life" within the framework of 38 C.F.R. § 3.343(a). R. at 9–11; *see Karnas,* 1 Vet. App. at 310–11.

Section 3.344 addresses the stabilization of disability evaluations. Paragraph (a) of that section states in relevant part:

Ratings on account of diseases subject to temporary or episodic improvement, e.g., manic depressive or other psychotic reaction, ... will *not be reduced on any one examination, except* in those instances

*where all the evidence of record clearly warrants* the conclusion *that sustained improvement* has been demonstrated.

38 C.F.R. § 3.344(a) (1991) (emphasis added). Section 3.344(c), clearly applicable to appellant's claim, was also ignored by the 1981 rating decision. Section 3.344(c) states in pertinent part:

(c) *Disabilities which are likely to improve.* The provisions of paragraphs (a) and (b) of this section apply to ratings which have continued for long periods at the same level (5 years or more). They do not apply to disabilities which have not become stabilized and are likely to improve.

38 C.F.R. § 3.344(c) (1991). Prior to the 1981 unlawful reduction, appellant was awarded a 100% disability rating for service-connected schizophrenia effective February 19, 1971. R. at 2–3. Appellant appears to qualify under this five-year rule, as his diagnosis of schizophrenic reaction, undifferentiated type, has stabilized; and the record indicates that appellant's condition is not likely to improve. The record is replete with medical evaluations and summaries recommending continuous treatment and medication. R. at 4–11. More importantly, neither the February 6, 1981, evaluation nor the May 7, 1981, rating decision discussed evidence of improvement in appellant's condition as required by section 3.44. *See Lehman v. Derwinski,* 1 Vet. App. 339, 342–43 (1991).

The 1981 rating decision indicates "administrative failure to apply the correct statutory and regulatory provisions to the correct and relevant facts." *Oppenheimer v. Derwinski,* 1 Vet.App. 370, 372 (1991). *See Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991) (discussing 38 C.F.R. § 3.105 (1990)). This Court has consistently held that such a reduction made without observance of the law is void *ab initio. Schafrath,* 1 Vet.App. at 596; *Heerdt v. Derwinski,* 1 Vet.App. 551 (1991); *Lehman,* 1 Vet.App. at 343–44. The 1989 BVA decision, now on appeal, failed to address such administrative error and apparently continued the unlawful reduction. However, the issue of the Court's jurisdiction to review administrative error committed by the VARO prior to the BVA decision on appeal (in this case, failing to apply sections 3.343 and 3.344 before reducing appellant's disability rating) is presently before the Court in the consolidated cases of *Russell v. Derwinski,* U.S.Vet.App. No. 90–396, and *Collins v. Derwinski,* U.S.Vet. App. No. 90–416 pending en banc review. In light of the improper application of the statutory standards to appellant's claim, on remand the Board may further wish to take into account 38 C.F.R. §§ 3.104, 3.105 (finality and revision of decisions based upon clear and unmistakable error), and §§ 19.185(a), 19.187(a) (1991) (reconsideration upon obvious error of fact or law) in accordance with this Court's resolution of *Russell/Collins.*

### C. Duty to Assist

#### 1. Social Security Records

■ In his brief, appellant contends that, since the Social Security Administration (SSA) has deemed him unemployable and eligible for benefits due to his mental condition, the VA should also grant him a total disability rating based on the SSA's findings. Br. of Appellant at 15. Appellant also argues, that under 38 C.F.R. § 3.201(a), the VA is deemed to have received SSA records as of the date of the receipt of such records by the SSA. Br. of Appellant at 14.

The pertinent portion of section 3.201(a) in dispute reads as follows:

(a) Evidence received in the Social Security Administration in support of a claim filed on or after January 1, 1957, for benefits under Title II of the Social Security Act will be considered to have been received in the Department of Veterans Affairs as of the date of receipt in the Social Security Administration.

38 C.F.R. § 3.201(a) (1991). At first blush, it appears that this first sentence of subsection (a) literally means that the VA is charged with constructive notice of all evidence received by the SSA that was filed in conjunction with Title II benefits. This interpretation, which appellant urges the Court to accept, would take the sentence out of the context of the regulation in its

entirety. Title II of the Social Security Act, 42 U.S.C. § 402, et seq., relates to old age, survivor and disability benefits, and the remainder of paragraph (a) and paragraph (b) of this regulation refers to a claim for dependency and indemnity compensation (DIC) for service-connected deaths. *See* 38 C.F.R. § 3.201(a), (b). The enabling statute for this regulation, 38 U.S.C. § 5105 (formerly § 3005), refers to joint applications for social security claims under 42 U.S.C. § 402 et seq., and claims under chapter 13 of title 38, which deals with only DIC benefits. The Court agrees with the Secretary that section 3.201(a) "applies only to claims for VA dependency and indemnity compensation." Br. of Appellee at 17. This regulation has no application to the merits of this case.

While the argument that the VA had constructive notice of SSA records under section 3.201(a) is without merit, there is evidence in the record that the VA had actual notice of such records and failed in its duty to assist the veteran in developing his claim by acquiring those records under 38 U.S.C. §§ 5106 and 5107(a) (formerly §§ 3006 and 3007(a)). A Problem Oriented Initial Assessment and Plans Evaluation, dated May 12, 1981, disclosed that the veteran was receiving social security disability benefits. R. at 14. The veteran submitted to the VA a copy of a letter that he sent to Senator Alan Cranston questioning the VA's denial of a 100% disability compensation rating when the SSA had awarded him 100% disability benefits based on his unemployability. R. at 71–72.

Once a claimant has submitted a well-grounded claim, "the Secretary shall assist the claimant in developing facts pertinent to the claim." 38 U.S.C. § 5107(a) (emphasis added); 38 C.F.R. § 3.103(a) (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Murphy,* 1 Vet. App. at 80–81. The appellant did present "a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy,* 1 Vet.App. at 81. Once the veteran has presented such a claim, the burden shifts to the Secretary to assist the veteran

in developing "*all* relevant facts, not just those for or against the claim." *Godwin,* 1 Vet.App. at 425; *Murphy,* 1 Vet.App. at 82. Under 38 U.S.C. § 5107(a), the VA's duty to assist specifically includes requesting information from other Federal departments or agencies. Under 38 U.S.C. § 5106, the SSA, as must any other Federal department or agency, "provide such information to the Secretary as the Secretary may request for purposes of determining eligibility for or amount of benefits, or verifying other information with respect thereto." In part II.A. of this opinion, *supra,* the Court found that the veteran did provide a well-grounded claim; thus, the VA was obligated to assist the veteran in developing his claim. The VARO had actual notice that the veteran was receiving SSA disability benefits based upon his unemployability status (at least since 1981), and violated its duty to assist the veteran by not acquiring the SSA decision and the supporting medical records that were pertinent to his VA claim.

Although the SSA's decision regarding appellant's unemployability is not controlling for VA determinations, it is certainly "pertinent" to the present claim. *See Collier v. Derwinski,* 1 Vet.App. 413, 417 (1991). This evidence is relevant to the determination of appellant's ability to secure and follow a substantially gainful occupation under 38 C.F.R. § 4.16(c). This Court has noted that while

there are significant differences in the definition of disability under the Social Security and VA systems (*e.g.,* under Social Security, 42 U.S.C. § 423(d) (1988) and 20 C.F.R. § 404.1509 (1990), the disability need not be reasonably likely to last for the claimant's lifetime as is required for VA purposes under 38 U.S.C. § [1502(a)(1)] and 38 C.F.R. § 3.340(b)), there are also significant similarities (*e.g.,* both statutes include within their respective definitions, the terms "substantial[ly]" and "gainful" when describing the form of employment in which the claimant is unable to engage).

*Collier,* 1 Vet.App. at 417. *Compare generally* 38 U.S.C. §§ 1502, 1521 *and* 38

C.F.R. §§ 4.16, 3.321(b)(2), 3.340, 3.342 *with* 42 U.S.C. §§ 416, 423 (1988 & Supp. I 1989) *and* 20 C.F.R. §§ 404.1505–1576 (1991).

In response to the Court's order of October 23, 1991, the parties filed post-oral argument, supplemental briefs addressing, among other issues, the following two questions:

1) whether the Social Security Administration (SSA) is obliged to discontinue supplemental security income (SSI) and social security disability (SSDI) benefits based on a change in a recipient's status vis-a-vis employability, and

2) whether the SSA conducts periodic examinations to determine the employability status of recipients of SSI and SSDI benefits.

*Murincsak v. Derwinski*, 1 Vet.App. 618 (1991) (order). In their supplemental briefs, both parties agreed that these two questions should be answered in the affirmative, which demonstrates the relevance and significance of the 1981 SSA decision as to the VA's current adjudication of this claim.

Pursuant to 42 U.S.C. § 421(i)(1), where an individual has a disability as defined for Social Security Act purposes, the case is to be reviewed by the Secretary of Health and Human Services or the applicable state agency at least once every three years subject to a waiver under paragraph (2). Paragraph (1) further provides that, where a finding of permanent disability has been made, reviews are to be made "at such times as the Secretary determines to be appropriate." Regulations have been promulgated for continuous review of individuals receiving Social Security disability or SSI disability benefits to determine whether the disability is continuing or has ceased. *See* 20 C.F.R. §§ 404.1589, 404.-1590(b), (c), 416.989, 416.989a, 416.990(b), (c); Supp.Br. of Appellee at 1–3. It is also incumbent upon the SSA to withdraw disability benefits if a recipient no longer meets entitlement criteria, such as engaging in "substantial gainful activity". 20 C.F.R. § 404.401a; *see* 38 C.F.R. §§ 404.-1590(a), 404.990(a); Supp.Br. of Appellant at 3–5.

The Secretary of Veterans Affairs further responded to the Court's order regarding the staleness of the 1981 SSA disability determination concerning appellant by stating that

it is uncertain from the record when SSA initially made a determination that Appellant was entitled to SSA disability benefits. The record does indicate, at page 14, that Appellant was in receipt of SSA benefits in May 1981, but not when it was first determined that he was entitled thereto or the dates of medical records filed in support of entitlement.

Supp.Br. of Appellee at 2. This response exemplifies the Secretary's disregard of the duty to assist triggered by the VA's actual knowledge of the existence of such SSA records. Had the VA fulfilled its duty to assist the veteran in developing his claim by acquiring the SSA decision and these records, the Secretary would have known the initial date of entitlement to such SSA benefits and for which disability it was awarded.

In further response to the Court's order of October 23, 1991, counsel for the Secretary asserted that any medical records dated in 1981 would be irrelevant and stale with respect to appellant's reopened claim, filed with the VA in July 1987, for entitlement to an increased rating based on individual unemployability due to service-connected schizophrenia. Supp.Br. of Appellee at 2–3. Even if that were so, which the above discussion rebuts, the VA's failure to obtain the SSA decision and records again exemplifies its failure to comply with its duty to assist the veteran by following its own regulations in evaluating a veteran's claim. *See* 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42 (1991). Section 4.1 requires that there be "accurate and fully descriptive medical examinations ... with emphasis upon the limitation of activity imposed by the disabling condition" and that "each disability be viewed in relation to its history." Section 4.2 requires the "rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately re-

flect the elements of disability present." Section 4.10 requires that in cases of functional impairment, "evaluations are based upon lack of usefulness" and medical examiners must furnish, "in addition to the etiological, anatomical, pathological, laboratory and prognostic data required for ordinary medical classification, full description of the effects of the disability upon the person's ordinary activity." *See Schafrath*, 1 Vet.App. at 594. Clearly, in the fulfillment of the Secretary's duty to assist, these SSA records are pertinent in accurately rating a veteran's disability in light of his entire medical history, regardless of whether "there is ample recent evidence in the extant record of Appellant's present psychiatric status." Supp.Br. of Appellee at 3.

As noted earlier, the record on appeal includes a letter, dated January 22, 1988, from appellant to Senator Alan Cranston requesting assistance with his claim. R. at 71. In the Secretary's response to the Court's October 23, 1991, order, requesting an explanation as to when and how the letter became part of the record, there are attached copies of letters from Senator Cranston, dated February 11, 1988, and the Secretary's response to Senator Cranston, dated February 24, 1988. These two letters and their subject matter were not made part of the record on appeal, apparently because they were not considered to be part of the record of proceedings before the BVA when it reviewed appellant's claim. The jurisdiction of and review by this Court is limited to "records of proceedings before *the Secretary* and the Board." 38 U.S.C. § 7252(b) (formerly § 4052(b)) (emphasis added). The Court stresses that if justice is to be done for the veteran and the government, there must be a complete record on appeal accurately reflecting the sequence of events in adjudicating a veteran's claim.

The Secretary's duty to assist includes obtaining this evidence from the SSA, and giving it appropriate consideration and weight in its determination to award or deny appellant a total disability rating based on unemployability. At a minimum, the decision of the administrative law judge at the SSA "is evidence which cannot be ignored and to the extent its conclusions are not accepted, reasons or bases should be given therefor." *Collier*, 1 Vet.App. at 417. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991); *Sammarco v. Derwinski*, 1 Vet.App. 111, 112 (1991); *Gilbert v. Derwinski*, 1 Vet.App. 49 at 56–57 (1990).

## 2. VAMC Records

As this Court's review is limited by 38 U.S.C. § 7252(b), certain medical records from the VAMC in Long Beach, California, dated April 2, 1989, June 16, 1989, and October 6, 1989, were not included in the record on appeal, because they were not reviewed by the BVA prior to the decision on appeal. *See Rogozinski v. Derwinski*, 1 Vet.App. 19 (1990). As stated earlier, the duty to assist the veteran includes following all VA regulations when evaluating and adjudicating a veteran's claim in light of the veteran's entire medical history. *See* 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42. The only way to adjudicate a veteran's claim properly and fairly is to obtain all pertinent records.

■ The Secretary contends that the VA's statutory and regulatory duty to assist the veteran in processing a claim includes obtaining VA medical records, but only to the extent VARO or BVA personnel have been informed of the existence and relevance of such records. Br. of Appellee at 8. The medical records in dispute are dated between the date of the last rating decision and the BVA decision on appeal. The Secretary also contends that

> it would be impossible to expect BVA to decide the merits of a claim based upon evidence of which it is unaware. (And, it would be a fictional exercise for the Court to review a BVA decision in which "the record of proceedings before the [Secretary] and the Board" was somehow deemed to contain records actually not there; *see* 38 U.S.C. § 7252(b) (formerly 4052(b))).

Br. of Appellee at 12.

The Court cannot accept the Board being "unaware" of certain evidence, especially

when such evidence is in possession of the VA, and the Board is on notice as to its possible existence and relevance. When the VA is put on notice prior to the issuance of a final decision of the possible existence of certain records and their relevance, the BVA must seek to obtain those records before proceeding with the appeal. The BVA cannot claim to be "unaware" of certain records, and use this assertion as a sword against mentally ill veterans. The duty to assist the veteran does not end with the rating decision of the VARO, but continues while the claim is pending before the BVA. There is a continuing obligation upon the VA to assist the veteran in developing the facts of his claim throughout the entire administrative adjudication. The VA's duty "to obtain records regarding medical history [is] an important part of the Department's affirmative duties ... whether or not the claimant requests a particular record." *Schafrath,* 1 Vet.App. at 595.

In this case, the BVA had ample notice that the veteran had been attending continuous weekly treatment and counseling as an outpatient at the Long Beach VAMC for many years. For example, although the veteran had apparently referenced ongoing treatment at the Long Beach VAMC during a February 13, 1989, VA examination, R. at 87, and testified about the ongoing treatment at his May 16, 1989, hearing, R. at 97, the most recent Long Beach VAMC report in the record before the BVA is the February 1989 report of examination, nearly ten months before the issuance of the BVA decision on December 9, 1989. Having concluded that the BVA had actual notice of the possible existence and relevance of the veteran's ongoing treatment at the Long Beach VAMC sufficient to trigger the duty to assist the veteran by acquiring and considering such records before adjudicating appellant's claim, the Court need not reach the issue of whether the BVA should be charged with constructive notice of all medical records in the possession of the VA under all circumstances.

Jurisdiction and review by this Court is over the "record of proceedings before the Secretary *and* the Board." 38 U.S.C. § 7252(b) (emphasis added). The Court is precluded from exercising proper and effective judicial review over Board decisions when an incomplete record on appeal is submitted to the Court. On remand, the Board is instructed to fulfill its duty to assist the veteran by obtaining and reviewing all pertinent records and to provide adequate reasons or bases for its decision. At that time, the veteran is free to submit any new evidence, including post-BVA decision medical records.

### III. CONCLUSION

The VA clearly violated its duty to assist, and, thus, the veteran's claim is remanded for readjudication in light of the veteran's entire medical evidence, including both the SSA records and the Long Beach VAMC records, and for an evaluation of his claim under 38 C.F.R. § 4.16(c). Having concluded that legal error was committed, the December 5, 1989, BVA decision is VACATED and REMANDED for proceedings consistent with this Court's opinion.

*It is so Ordered.*