Citation Nr: 1302149 
Decision Date: 01/18/13 Archive Date: 01/23/13

DOCKET NO. 07-12 963 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for ventricular tachycardia, claimed as heart disease. 

2. Entitlement to a total rating for compensation based on individual unemployability (TDIU), for the period before February 23, 2012. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. Hancock, Counsel




INTRODUCTION

The Veteran had active duty service from May 1972 to February 1977.

These matters comes before the Board of Veterans' Appeals (Board) on appeal from a July 2006 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. 

The Board remanded these claims in February 2009 and November 2010 for additional development and adjudication.

The Board also observes that as the Veteran is, effective from February 23, 2012, in receipt of a total schedular rating for his disabilities, it follows that the issue of entitlement to a total disability rating based upon individual unemployability due to service-connected disabilities for the period from February 23, 2012, is moot. See April 2012 rating decision issued by the Appeals Management Center (AMC). The TDIU is therefore characterized as shown on the title page of this decision.

The appeal is REMANDED to the RO via the AMC, in Washington, DC. VA will notify the appellant if further action is required.


REMAND

Unfortunately, another remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that, in addition to ensuring compliance with certain Court case law, there is a complete record upon which to decide the case. The Board also notes that the Court has held "that a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, a right to compliance with the remand orders." Stegall v. West, 11 Vet. App. 268, 271 (1998). As such, compliance with the terms of the remand is necessary prior to further appellate review, and if not, "the Board itself errs in failing to ensure compliance." Id. 

The Veteran asserts that service connection is warranted for heart disease. The Board's November 2010 remand stated, in pertinent part, that a February 2009 Board remand ordered that the Veteran be afforded a VA examination to determine whether it was at least as likely as not that the Veteran's service-connected post traumatic stress disorder (PTSD) caused or aggravated any current ventricular tachycardia. While the examination subsequently afforded the Veteran in January 2010 supplied a negative opinion on the question of direct service connection, it did not include a response to the above-requested secondary service connection question. 

As such, the Board's November 2010 remand ordered the completion of the following development:

2. The Veteran should be afforded a VA examination heart to determine the etiology of any current ventricular tachycardia. All indicated tests and studies are to be performed. Prior to the examination, the claims folder and a copy of this remand must be made available to the physician for review of the case. A notation to the effect that this record review took place should be included in the report of the examiner. The examination must be conducted following the protocol in VA's Disability Worksheet for VA Heart Examination. 

The examiner should determine whether it was at least as likely as not (50 percent probability or greater) that any ventricular tachycardia was caused or aggravated (permanently worsened) by his Veteran's service-connected post-traumatic stress disorder (PTSD). The examiner should provide a rationale for this opinion. If the examiner opines that the question cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so (why is the causation unknowable?), must be provided.

Review of the January 2010 examination report show s that the examiner, a Family Nurse Practitioner, opined that the Veteran's "exercise induced ventricular tachycardia was NOT caused by or aggravated by his PTSD." The opinion was supported by included rationale. However, as noted, the Board's November 2010 remand specifically requested that the examination be conducted by a "physician." Stegall. As such, the Veteran needs to be afforded another examination, to be conducted by a physician. 

The Board's November 2010 also ordered the following development to be completed:

1. The AMC/RO [should] inquire of the Veteran whether he has applied for SSD benefits. If the response is affirmative, the AMC/RO should obtain from the Social Security Administration the records pertinent to the appellant's claim for Social Security disability benefits as well as the medical records relied upon concerning that claim.

This request was specifically set out as part of a letter mailed by the AMC to the Veteran in February 2011. The Veteran thereafter responded to the AMC, later in February 2011, that "I applied for Social Security Disability on January 14, 2011." The AMC, however, is not shown to have attempted to obtain the records pertinent to this claim. Stegall. There is also no indication in the file to suggest that the Veteran is claiming to be in receipt of SSA disability benefits for a disorder not presently on appeal. These missing SSA records may be relevant to the Veteran's case. Thus, in order to properly adjudicate the Veteran's claims, the complete SSA records should be obtained and evaluated because these records are potentially pertinent to the Veteran's current claims. Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010), Hyatt v. Nicholson, 21 Vet. App. 390, 394 (2007), Clarkson v. Brown, 4 Vet. App. 565, 567-68 (1992), Murincsak v. Derwinski, 2 Vet. App. 363 (1992). Therefore, the Board is of the opinion that a remand is required.

The Board further notes that as part of its November 2010 remand the following evidentiary development was requested: 

3. Following the completion of the above development, the Veteran should be afforded VA general medical examination to obtain an opinion as to whether his service connected disabilities together would prevent him from obtaining or maintaining employment for which his education and occupational experience would otherwise qualify him. The physician should review the claims folder and note such review in the examination report or addendum.

The Board notes that the Veteran's service-connected disabilities include PTSD (rated 70 percent disabling); right shoulder scapular bursitis (rated 40 percent disabling); lumbosacral strain with herniated nucleus pulpous L4-5 (rated 40 percent disabling); brain tumor residuals (rated 30 percent disabling); left shoulder scapular bursitis (rated 30 percent disabling); tinnitus (rated 10 percent disabling); left knee degenerative joint disease and osteonecrosis (rated 10 percent disabling); and bilateral hearing loss and headaches (both rated noncompensably disabling). 

The VA Family Nurse Practitioner, who conducted the above-mentioned March 2011 examination, commented as part of the examination report that the Veteran's ventricular tachycardia had no effect on his "usual occupation and resulting work problem(s)." As to the Veteran's service-connected lumbar spine disability, she stated that the Veteran had marked restriction of motion in flexion and rotation. An opinion concerning whether the Veteran's service-connected left knee disability would prevent him from obtaining or maintaining employment was not supplied. The VA family Nurse Practitioner further commented that the Veteran "should be able to perform sedentary work between the waist and shoulders within the above restrictions. He should be allowed to move from sitting to standing as needed for comfort. An example would be small component assembly." She also indicated that she was not certified to comment on the opinions requested concerning the Veteran's service-connected hearing loss and PTSD. The service-connected tinnitus was also not mentioned. 

The report of a February 2012 PTSD examination shows that the examiner opined that the Veteran's lowered frustration tolerance and level of anxiety secondary to his PTSD "inhibits" his ability to obtain and maintain productive sedentary employment consistent with his previous level of functioning. This supplied opinion is, in the opinion of the Board, not a sufficient response to the question concerning employability posed in the November 2010 remand. Stegall. 

The Veteran was also afforded a VA audio examination in February 2012. The examining audiologist opined that Veteran's hearing loss had an "impact" on the ordinary conditions of daily life, including his ability to work. This was noted to be based upon the Veteran's noted frustration due to the inability to hear when background noise was present. This opinion too, like the opinion supplied in the course of the VA PTSD examination is not, in the opinion of the Board, sufficiently responsive to the Board's November 2010 remand instructions concerning the issue of TDIU. Stegall. 

To this, the Board notes that the Court has found that an adequate examination must support its conclusion with an analysis that can be weighed against contrary opinions. Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007). In Stefl, the Court found that a medical examination was inadequate because it provided an unsupported conclusion. If an examination report does not contain sufficiently detailed rationale, it is incumbent upon rating personnel to return the report as inadequate for rating purposes. 38 C.F.R. § 4.2 (2012). Therefore, the Board finds that the above-discussed VA medical opinions concerning the instant TDIU matter are inadequate to render a final decision, and, as such, an additional VA examination is needed. 



Accordingly, the case is REMANDED for the following action:

1. The RO/AMC should contact SSA and request all documents pertaining to any award or denial of disability benefits from the SSA, and specifically request a copy of the decision(s) awarding or denying any benefits and copies of the medical records upon which the SSA based its decision. Efforts to obtain these records should only end if they do not exist or further efforts to obtain them would be futile. 38 C.F.R. § 3.159(c)(2). If the records are unavailable, the claims file must be properly documented as to the unavailability of these records.

2. The RO/AMC should arrange for the Veteran to be scheduled for a VA heart examination by a physician to determine the etiology of any current ventricular tachycardia. All indicated tests and studies are to be performed. Prior to the examination, the claims folder and a copy of this remand must be made available to the physician for review of the case. A notation to the effect that this record review took place should be included in the report of the examiner. The examination must be conducted following the protocol in VA's Disability Worksheet for VA Heart Examination. 

The examining physician should answer the following questions:

A. Is it at least as likely as not (50 percent probability or greater) that any current ventricular tachycardia, if found, is related to the Veteran's period of active service? 

B. If not, is it at least as likely as not that the Veteran's service-connected PTSD, caused OR aggravated (permanently worsened) any current ventricular tachycardia? 

Additionally, based on a review of the case, the examining physician must opine as to whether, without regard to the Veteran's age or the impact of any non service-connected disabilities, it is at least as likely as not that the Veteran's ventricular tachycardia alone renders him unable to secure or follow a substantially gainful occupation for the period before February 23, 2012. The examiner should reconcile any opinion with the medical evidence of record and the Veteran's contentions.

If the examiner opines that the Veteran's ventricular tachycardia does not render him unemployable, the examiner should suggest the type or types of employment in which the Veteran would be capable of engaging with his current heart disorder, given his current skill set and educational background. 

The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.

A clear rationale for all opinions provided would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If the examiner opines that any of the posed questions cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so (why is the causation unknowable?), must be provided.

3. Following the completion of the above development, the RO/AMC should arrange for the Veteran to be scheduled for an appropriate VA medical examination(s) by a physician (and audiologist concerning the Veteran's hearing loss and tinnitus) with appropriate expertise to determine the impact of ALL of the Veteran's service-connected disabilities - PTSD, right shoulder scapular bursitis, left shoulder scapular bursitis, lumbosacral strain with herniated nucleus pulpous L4-5, brain tumor residuals, tinnitus, left knee degenerative joint disease and osteonecrosis, bilateral hearing loss, and headaches -- on his employability. All indicated studies should be performed, and all findings should be reported in detail. In accordance with the latest AMIE worksheets, the examiner(s) is to provide a detailed review of the Veteran's pertinent medical history, current complaints, and the nature and extent of his multiple service-connected disabilities. The examiner(s) should comment on the effect of the Veteran's service-connected disabilities on his ability to engage in any type of full-time employment, including any form of sedentary work, and whether, in the examiner's opinion, the respective service-connected disability is of such severity to result in unemployability for the period before February 23, 2012. 

Based on the interview, examination, and review of the claims file, the examiner must provide an opinion as to whether it is at least as likely as not (i.e., probability of 50 percent or more) that the Veteran is unable to obtain or maintain substantially gainful employment due only to his service-connected disabilities, consistent with his education and occupational experience, irrespective of age and any nonservice-connected disorders. Any opinion must reflect consideration of the Veteran's education and occupational experience but not his age.

The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.

The rationale for all opinions expressed should be provided. The claims file, including a copy of this remand, must be made available to the examiner(s) for review.

4. The Veteran is hereby notified that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2012). In the event that the Veteran does not report for any scheduled examination, documentation should be obtained which shows that notice scheduling the examination was sent to the last known address. It should also be indicated whether any notice that was sent was returned as undeliverable. 

5. After undertaking any other development deemed appropriate, the RO/AMC should readjudicate the issues of entitlement to service connection for ventricular tachycardia and entitlement to TDIU. If in any respect the benefits sought are not granted in full, the Veteran and his representative should be furnished with a supplemental statement of the case and afforded an opportunity to respond before the record is returned to the Board for future review.

The purpose of this REMAND is to ensure due process. The Board does not intimate any opinion as to the merits of the case, either favorable or unfavorable, at this time. No action is required of the appellant until he is notified. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



_________________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2012).