Citation Nr: 1546188 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 10-43 524 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cheyenne, Wyoming


THE ISSUE

Entitlement to service connection for a psychiatric disorder to include schizophrenia and depression. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant 


ATTORNEY FOR THE BOARD

L. J. Vecchiollo

INTRODUCTION

The Veteran served on active duty for training (ACDUTRA) from July 1983 to February 1984. The Veteran had subsequent Montana Army National Guard (ANG) service.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO), which denied service connection for schizophrenia and depression. In an August 2012 rating decision, the RO denied service connection for schizophrenia and depression as secondary to tinnitus, middle ear disease, or perforation, right ear. While the RO treated the secondary service connection claim as separate from the claim on appeal, the Board notes that a separate theory of entitlement for service connection for the same disability is not a separate claim. Claim. See generally, Boggs v. Peake, 520 F.3d 1330, 1335 (Fed.Cir.2008) (a new theory of causation for the same disease or injury that was the subject of a previously denied claim cannot be the basis of a new claim). Accordingly, the Board will consider the Veteran's claim for service connection as including secondary service connection. 

In August 2015, the Veteran testified at a Board video conference hearing before the undersigned Veterans Law Judge.

This appeal was processed using the Veteran's Benefits Management System (VBMS). In addition to the VBMS file, there is a Virtual VA paperless claims file associated with the Veteran's claims. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.



REMAND

The Veteran's service treatment records (STRs) reveal that, on his May 1983 enlistment examination, he was noted to suffer from situational depression due to a recent job loss. The Veteran participated in period of ACDUTRA from July 1983 to February 1984. The Veteran's STRs are negative for any in-service complaints or treatment of a psychiatric disorder.

In May 1987, while on a period of ACDUTRA, the Veteran had a sore throat after an Army Physical Fitness Test (APFT) test, and it seemed to get worse when he went out in the field. Medics only treated him with throat lozenges, and he was told to go to the dispensary upon arrival back at to the garrison. He received medication there. His sore throat persisted. The Veteran subsequently went to his civilian doctor, received a checkup and medication, and he did well. 

The Veteran was incarcerated on February 25, 1989 for brandishing a gun, and then transferred to Warm Springs Montana State Hospital for treatment for schizophrenia from March 4, 1989 to April 21, 1989. The hospital report noted that, according to his mother, the Veteran never had any previous psychiatric hospitalizations, and he was completely normal until the domestic abuse jail term when the implantation delusion developed. The Veteran's finances were noted to be a major stress on him. The examiner noted that the Veteran reported a buzzing in his head which may have led to auditory hallucinations. He has thereafter continued to be diagnosed with and treated for schizophrenia and depression. 

On a June 1991 reserve service examination, the Veteran reported that he had a mental disorder, had previously tried to commit suicide in 1988, and was hospitalized for five months in Warm Springs Montana. 

The Veteran asserted that in one of his periods of ACDUTRA, he participated in a live fire exercise which caused hearing and other problems. The Veteran stated that he "was sent to the medic there and all he did was give me throat lozenges and sent me home." See hearing transcript (T.) at 4. He testified that his psychiatric symptoms started within "62 hours after I got back" from this period of ACDUTRA. See T. at 5. He indicated he was then sent to jail for discharging a firearm within the city limits of Sheridan County, Montana. While he was in jail, he was admitted to a hospital in Warm Springs, Montana, and was thereafter diagnosed with paranoid schizophrenia and depression. In statements and testimony, he asserts that he never heard any voices or had any depressive symptoms before then. The Veteran stated that it is more likely than not that his annual training, particularly participating in the live fire exercise, triggered his paranoid schizophrenia and depression. 

The Veteran has variously asserted that these events occurred sometime between 1985 to 1989. In a February 2010 psychiatric treatment note, the Veteran stated that this period of ACDUTRA was from 1987 to 1989. At his August 2012 hearing, he testified that that this period of ACDUTRA occurred in either 1985 or 1986. The Board notes that the evidence of record shows that the in-service sore throat incident occurred in May 1987. However, the Veteran was transferred from jail, manifested psychiatric symptoms for the first time, taken to a psychiatric facility for the first time, and first diagnosed with paranoid schizophrenia and depression starting on February 25, 1989. The Board finds that the period of ACDUTRA referenced by the Veteran must have occurred in February 1989, because he testified that his psychiatric symptoms first occurred within two or three days after his ACDUTRA. Moreover, the Board notes that the Veteran's ANG annual statement indicates that the Veteran did participate in a period of ACDUTRA at some time during his reserve service from May 1988 to May 1989, although the specific date(s) of that period of ACDUTRA was not provided. Therefore, remand is needed to determine if the Veteran served on ACDUTRA in February 1989. 

The Veteran has also asserted that his psychiatric disability is etiologically related to his tinnitus, middle ear disease, or perforation, right ear. However, only his tinnitus is service connected. The Board observes that the Veteran has not been afforded a VA examination in this case and should be afforded one. 

The Veteran has stated, in correspondence and treatment records, that he is in receipt of Social Security Administration (SSA) disability benefits. Where VA has actual notice of the existence of disability records held by the SSA that appear relevant to a pending claim, VA has a duty to assist by requesting those records from SSA. See Murincsak v. Derwinski, 2 Vet. App. 363, 369-70 (1992). Thus, on remand, the records from SSA should be requested.

The Veteran has also testified that he received psychiatric treatment at the Sheridan, Wyoming VA Medical Center (VAMC) around 2001, and starting around 2002, at the West Valley, Utah Community Based Outpatient Clinic (CBOC) and then at the Salt Lake City VA hospital. In addition, relevant ongoing medical records should also be requested. 38 U.S.C.A. § 5103A(c) (West 2014); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim).

Accordingly, the case is REMANDED for the following action:

1. Attempt to verify, through official sources, whether the Veteran served on a period of ACDUTRA with the Montana Army National Guard in February 1989. If the records are determined to be unavailable, issue a formal finding of unavailability documenting such, and notify the Veteran and his representative accordingly.

2. Request from the SSA, the records pertinent to the Veteran's claim for Social Security disability benefits as well as the medical records relied upon concerning that claim. If the requested records are not available, the Veteran should be notified of such.

3. Request relevant VA treatment records from the Sheridan, Wyoming VAMC from 2001; the West Valley, Utah CBOC and Salt Lake City VA hospital, starting in 2002; and ongoing records dating since November 2011 from the Salt Lake City VA health care system (HCS) and associate them with the electronic claims file. If any requested records are not available, the Veteran should be notified of such. 

4. After the foregoing development has been completed to the extent possible, schedule the Veteran for a VA mental disorders examination to determine whether his current psychiatric disability is related to service or service-connected tinnitus. The examiner should review the record prior to examination. The examiner should provide an opinion as to the following questions:

(a) If, and only if, it is determined that the Veteran served on ACDUTRA in February 1989, the examiner should be asked whether is it at least as likely as not (50 percent probability or more) that the Veteran currently has a psychiatric disorder that had its onset in or is related to that period of ACDUTRA. 

(b) If the Veteran's psychiatric disorder is not related to service, is it at least as likely as not (50 percent probability or greater) that it was caused by his service-connected tinnitus? Please explain why or why not.

(c) If the Veteran's psychiatric disorder was not caused by the service-connected tinnitus, is it at least as likely as not that it has been permanently worsened beyond normal progression (as opposed to temporary exacerbations of symptoms) by the tinnitus? Please explain why or why not. If the examiner finds that the Veteran's psychiatric disorder has been permanently worsened beyond normal progression (aggravated), he or she should attempt to quantify the degree of aggravation beyond the baseline level of disability of the psychiatric disorder. 

(d) The examiner should provide a complete rationale for all opinions expressed and conclusions reached. Specifically, the examiner should comment on the finding in March 1989 psychiatric treatment records that a buzzing in the Veteran's head may have led to auditory hallucinations. 

5. After undertaking the development above and any additional development deemed necessary, the Veteran's claim should be readjudicated, to include consideration of the claim for service connection for schizophrenia and depression as secondary to tinnitus. If the benefit sought on appeal remains denied, the appellant and his representative should be furnished a supplemental statement of the case and be given an appropriate period to respond thereto before the case is returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


_________________________________________________
K. A. BANFIELD 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).