Citation Nr: 1126161 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 08-29 918 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


ISSUES

1. Entitlement to service connection for sleep apnea claimed as secondary to service- connected diabetes mellitus type II with erectile dysfunction. 

2. Entitlement to service connection for hypertension claimed as secondary to service- connected diabetes mellitus type II with erectile dysfunction or to service- connected arteriosclerotic heart disease. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Appellant and his wife


ATTORNEY FOR THE BOARD

A. Barner, Law Clerk


INTRODUCTION

The Veteran served on active duty from June 1966 to May 1970. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas.

The Veteran was afforded a Travel Board hearing in August 2009. A transcript of the hearing is associated with the claims file. 

Additional pertinent evidence was submitted at the August 2009 hearing. The Board may consider this newly received evidence in the first instance because it was accompanied by a waiver of review by the RO, the agency of original jurisdiction. See 38 C.F.R. § 20.1304 (2010).

This appeal was previously before the Board in March 2010, at which time it was remanded for an addendum opinion, if by the October 2007 examiner, then to provide the rationale for whether the Veteran's sleep apnea was caused or aggravated by his service- connected diabetes mellitus, and for rationale as to whether the Veteran's hypertension was caused or aggravated by the service- connected diabetes mellitus or arteriosclerotic heart disease. The October 2007 examiner provided an addendum opinion with rationale as to the first question; however, he did not address whether the Veteran's hypertension was caused by or aggravated by his service- connected arteriosclerotic heart disease. Given the foregoing, the Board finds that VA has substantially complied with the Board's prior remand as to the issue of entitlement to service connection for sleep apnea as secondary to diabetes mellitus. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where there was substantial compliance with Board's remand instructions). As to the issue of entitlement to service connection for hypertension as secondary to diabetes mellitus or arteriosclerotic heart disease, however, the Board finds that the ultimate question was not addressed, such that there has not been substantial compliance, and this issue is remanded. See Stegall v. West, 11 Vet. App. 268 (1998).

The issue of entitlement to service connection for hypertension claimed as secondary to service- connected diabetes mellitus type II or service- connected arteriosclerotic heart disease is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. All relevant evidence necessary for an equitable disposition of the Veteran's appeal has been obtained.

2. The Veteran's sleep apnea is not proximately due to or aggravated by his service- connected diabetes mellitus type II with erectile dysfunction. 


CONCLUSION OF LAW

The criteria for service connection for sleep apnea as secondary to the Veteran's service- connected diabetes mellitus type II with erectile dysfunction, have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating a claim for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2010). For the reasons to be discussed below, the Board finds that VA has satisfied its duties to the appellant under the VCAA. A VCAA notice consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. See Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim (1) veteran status; (2) existence of disability; (3) connection between service and the disability; (4) degree of disability; and (5) effective date of benefits where a claim is granted. Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006).

VA has made all reasonable efforts to assist the Veteran in the development of his claim, has notified him of the information and evidence necessary to substantiate the claim, and has fully disclosed VA's duties to assist him. In September 2007, the Veteran was notified of the information and evidence needed to substantiate and complete the claim on appeal. Additionally, the letter provided him with the general criteria for the assignment of an effective date and initial rating. Id. 

The Board notes that, in the present case, initial notice was issued prior to the November 2007 adverse determination on appeal; thus, no timing issue exists with regard to the notice provided the claimant. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Board further finds that VA has complied with the duty to assist by aiding the appellant in obtaining evidence. It appears that all known and available records relevant to the issue on appeal have been obtained and are associated with the Veteran's claims file. The RO has obtained the Veteran's service treatment records, as well as VA and non-VA medical records. The Veteran denied receiving benefits from the Social Security Administration in his August 2009 hearing. See Baker v. West, 11 Vet. App. 163, 169 (1998); Murincsak v. Derwinski, 2 Vet. App. 363, 370-72 (1992). He has also been afforded a VA medical examination in October 2007, with an April 2010 addendum opinion detailing the reasoning for the medical opinion. The Board notes that the VA examination reports contain sufficiently specific clinical findings and informed discussion of the pertinent history and clinical features of the disability on appeal and together are adequate for purposes of this appeal. In August 2009, the Veteran was afforded the opportunity to testify before the Board. The Board is not aware, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. 

As noted, at his August 2009 hearing, the Veteran submitted new evidence directly to the Board, along with a signed waiver of agency of original jurisdiction (AOJ) review of this evidence; thus, his appeal need not be remanded for RO consideration of this evidence. See 38 C.F.R. § 20.1304 (2010).

Based on the foregoing, the Board finds that the Veteran has not been prejudiced by any failure of VA in its duties to notify and assist him, and that any such violations could be no more than harmless error. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). In any event, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination). Thus, adjudication of his claim at this time is warranted. 

Service connection may be established on a secondary basis for disability which is proximately due to, or the result of, a service- connected disease or injury. See 38 C.F.R. § 3.310(a) (2010). Secondary service connection may also be established for a nonservice- connected disorder which is aggravated by a service-connected disability; compensation may be provided for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. See 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 448 (1995). As with any claim, when there is an approximate balance of positive and negative evidence regarding any matter material to the claim, the claimant shall be given the benefit of the doubt. 38 U.S.C.A. § 5107. 

The Veteran contends that his sleep apnea is secondarily due to his service-connected diabetes mellitus. As was noted in the March 2010 remand, at no point has the Veteran contended that his sleep apnea is directly related to his military service. 

In reviewing the Veteran's medical history, service treatment records do not show any complaints, diagnoses for or treatment for sleep apnea. On enlistment examination in February 1966 and again on separation examination in April 1970, the Veteran indicated that he did not experience frequent trouble sleeping. 

Sleep Management Services, Inc. conducted a sleep study in July 2007. The impression was of mild obstructive sleep apnea with an apnea/hypopnea index (AHI) of 11.1 events per hour and cyclical episodes of oxygen desaturation to 80 percent. Mild snoring was noted. Rapid eye movement (REM) sleep was decreased, with respiratory events increased into the severe range during REM sleep. The doctor opined that the Veteran's overall AHI would likely have been higher with a normal proportion of REM sleep. These events occurred while the Veteran was in a supine position. The doctor's general recommendations noted that continuous positive airway pressure (CPAP) therapy could be appropriate depending on the Veteran's: excessive daytime sleepiness, impaired cognition, mood disorders, insomnia, hypertension, ischemic heart disease, or history of stroke. Other recommendations included behavioral therapy to include a progressive weight loss program, avoidance of alcohol, sedatives and excessive fatigue as appropriate to the Veteran. Also, an ear, nose and throat evaluation to rule out or treat a structural abnormality was recommended if clinically indicated. If CPAP was not tolerated, the Veteran could be a candidate for consideration of an oral device. In addition, the Veteran might benefit from positional therapy to reduce the amount of time spent sleeping supine by having a snore ball sewn into his sleep shirt. 

Following another sleep study in August 2007, the impression was of a history of mild obstructive sleep apnea. The Veteran could not tolerate CPAP, and was switched to BiLevel therapy titrated to a pressure of 9/6 centimeters of water. Recommendations were for behavioral therapy as noted above, BiLevel therapy at the setting noted above, and re-assessment for compliance and symptomatology after one month of BiLevel therapy. 

In a September 2007 statement, Randal Bowlin, M.D., noted that the Veteran had been diagnosed with diabetes mellitus in 2004, and subsequently with obstructive sleep apnea. The Veteran was noted to snore loudly and occasionally stop breathing for periods lasting up to 30 seconds at a time while sleeping. Dr. Bowlin opined that the Veteran's diabetes aggravated his sleep apnea. Specifically, he explained that the Veteran's increased insulin increased his appetite, and in turn increased adipose tissue, which could very well develop in the throat, and cause the airway to restrict the air passage when he relaxed in an attempt to fall into a deep sleep. It was noted that the Veteran's obstructive sleep apnea required the use of a BiPap machine at night, which had been used since August 2007. The doctor's opinion was on a form with a statement that the Veteran's diabetes mellitus required insulin and restricted diet, or oral hypoglycemic agent and restricted diet. It was also indicated that the Veteran had aggravation of obstructive sleep apnea directly due to diabetes mellitus or likely to be caused in part and or aggravated by his diabetes mellitus. 

In October 2007, the Veteran was afforded a VA examination. Following review of the claims file and physical examination, the examiner noted that the Veteran had been diagnosed with diabetes mellitus in 2004, and was treated with Glucophage, and had some resulting neuropathy and erectile dysfunction. The examiner also noted that the Veteran had been found to have sleep apnea the previous month, after his wife noticed snoring and apneic spells. The Veteran was treated with BiPAP therapy with good results. As such, both type II diabetes mellitus with neuropathy and erectile dysfunction and sleep apnea syndrome were among his diagnoses. The examiner concluded that there was no evidence that the Veteran's sleep apnea was related to or aggravated by his diabetes mellitus, and that it was unlikely that his diabetes mellitus was a factor in his sleep apnea syndrome. 

At his August 2009 hearing, the Veteran reported that he was diagnosed with sleep apnea in approximately 2007 or 2008, for which he used a CPAP machine. He discussed how prior to his retirement, he had fallen asleep while working as a security guard despite sleeping through the night. He indicated that he had been told him there was a relationship between his sleep apnea and diabetes mellitus, and such a record from Dr. Bowlin is associated with his claims file. The Veteran's wife, who is also a registered nurse, posited that there was a relationship between diabetes mellitus and sleep apnea, or what were referred to as sleep disorders when she studied to be a nurse. Specifically, she stated that sleep disturbances caused snoring, and the person could lose their breath such that they holt awake to take a breath and then return to sleep. She that suggested that there was a direct correlation between sleep apnea and diabetes mellitus. The Veteran's wife explained that they had been married for 41 years, and the Veteran had always snored a lot, however, she suggested that the snoring worsened around the time that he was diagnosed with diabetes mellitus.

In addition, the Veteran submitted various Internet articles regarding a relationship between sleep apnea and diabetes mellitus. In a LibraryforDiabetes.com article, the Veteran emphasized that obesity is a common problem for those with diabetes mellitus type II, and a risk factor for developing sleep apnea. The article stated that sleep apnea was independently linked to glucose intolerance and insulin resistance, and that anyone with diabetes mellitus type II and sleep apnea would be at risk for increased glucose intolerance. In an article from nfb.org, the Veteran highlighted how individuals with obstructive sleep apnea were nine times more likely to have diabetes than those without, and that individuals who received therapy for sleep apnea could lower their glucose levels. The article suggested that sleep apnea could increase blood sugars and lower energy, but that wearing a CPAP mask for at least four hours a night, significantly reduced blood glucose levels, and for some, reduced the need for medications. Symptoms such as loud, persistent snoring, excessive sleepiness, and diabetes were identified as those that indicated an individual had sleep apnea. In an article from USA Today, the Veteran focused on statements that approximately 87 percent of obese patients with diabetes mellitus type II had undiagnosed sleep apnea. The article discussed how researchers tested 306 obese patients with diabetes mellitus type II, and most had sleep apnea without being aware of it, with 30 percent of them stopping breathing between 16 and 20 times per hour and 22 percent of them having more than 30 sleep apnea episodes per hour. An article by obesity.ygoy.com discussed a National Institute of Health study that indicated obese people with type II diabetes were at high risk of developing sleep apnea. A usmedicine.com article noted that researchers were unsure about the cause and effect relationship between sleep apnea and other disorders, but that there was a clear association between obstructive sleep apnea and conditions like hypertension, heart disease, stroke, ulcers and more. Notation was made in the margin listing several of the Veteran's diagnoses and connecting them with arrows, presumably suggesting a link between diabetes, arteriosclerotic heart disease and obstructive sleep apnea. Finally, a diabetesincontrol.com article stated there was clear evidence for high risk of sleep apnea among individuals with diabetes mellitus type II, and that research results suggested better control of glucose levels was attainable with CPAP therapy. 

Following an April 2010 remand by the Board, an addendum opinion to the October 2007 VA examination was made to offer a complete rationale regarding the likelihood of sleep apnea being related to or aggravated by the Veteran's diabetes mellitus. Considering Dr. Bowlin's September 2007 letter opining that the Veteran's sleep apnea was aggravated by his diabetes mellitus, the VA examiner stated that he was not aware of, and could not find any literature or evidence that diabetes mellitus had a causal or contributory effect on obstructive sleep apnea syndrome. The Board notes that the addendum refers to a September 2000 letter, however, this is clearly a typo, evident by the lack of a September 2000 letter pertaining to sleep apnea in the claims folder, as well as by the examiner's later reference in that same paragraph to a September 2007 letter by Dr. Bowlin, such that the typo is corrected as above. The VA examiner then addressed Dr. Bowlin's indication that diabetes mellitus caused increased circulating insulin, which in turn caused increased fat tissue with deposits in the neck and contributed to sleep apnea syndrome. The VA examiner reasoned that review of the claims folder established that the Veteran was initially treated with diet alone at the time of diagnosis for diabetes mellitus in 2004, and was later started on Metformin prior to his diagnosis of obstructive sleep apnea. Metformin was noted to cause increased peripheral utilization of insulin, thereby lowering his circulating blood insulin level. The record suggested that good diabetic control was obtained with the Metformin, or in fact even initially with diet alone. The VA examiner, therefore, reasoned that the Veteran's circulating insulin level should be normal or moderate. In addition, the Veteran's fat deposition in the neck was proportional to his weight. At the time of his obstructive sleep apnea diagnosis in July 2007, the Veteran weighed 234 pounds. This weight was well below those weights recorded from 2000 to 2002, prior to when the Veteran was diagnosed as having diabetes mellitus. For instance, according to the primary physician's and cardiologist's notes, the Veteran weighed 251 pounds, in September 2000 and January 2001, and he weighed 246 pounds in March 2002. Therefore, the VA examiner reasoned that there was no evidence that the Veteran's diabetes mellitus diagnosed in 2004 caused the Veteran to gain weight and deposit fat in his neck. Based on the above, the examiner concluded that it was much less likely than not that the Veteran's obstructive sleep apnea syndrome was either caused by or aggravated by his diabetes mellitus. 

The Board acknowledges the Veteran and his wife's contentions, cognizant that lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372, 1377 at n.4 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The Veteran and his wife, who is also a registered nurse, are competent to attest to the Veteran's symptomatology, including his loud snoring and breathing problems at night followed by tiredness during the day. Competency is distinguished from weight and credibility, which is a factual determination going to the probative value of the evidence. See Barr v. Nicholson, 21 Vet. App. 303 (2007); see Rucker v. Brown, 10 Vet. App. 67, 74 (1997). In this situation, the assertions regarding the described symptomatology are not only competent, but also credible and given probative weight. 

The Board has also considered the Veteran and his wife's statements asserting a nexus between his sleep apnea, and diabetes mellitus. Although the Veteran is competent to report his symptomatology, he is not competent, on the facts of this case, to render a medical opinion as to the etiology of his sleep apnea. In this regard, the Board notes evidence may be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). VA, however, "must consider lay evidence, but may give it whatever weight it concludes the evidence is entitled to." Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). Little probative value is given to the Veteran's etiological assertions as he is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465 (1999). In this situation, the Veteran's wife's assertions that his sleep apnea is caused by his diabetes mellitus are competent because she is a registered nurse. Her statements are also credible. The Board, however, assigns little probative value as to her etiological opinion because it is a conclusory assertion unsubstantiated by supporting rationale. 

The Internet reports were unaccompanied by a medical expert opinion regarding their bearing on this Veteran's case. The Internet evidence, standing alone, does not address the facts that are specific to the Veteran's case and does not establish a causal or contributory relationship between the Veteran's service-connected diabetes mellitus and his sleep apnea. Accordingly, the articles are of negligible probative value. See Mattern v. West, 12 Vet. App. 222, 228 (1999).

Following a review of the evidence, the Board concludes that the most persuasive evidence is against the claim of service connection for sleep apnea as secondary to service- connected diabetes mellitus. The Board accords particular probative value to the April 2010 VA examiner's opinion in concert with the October 2007 examination, finding that the Veteran's sleep apnea was much less likely than not caused by or aggravated by his diabetes mellitus. That opinion was arrived at after thorough and comprehensive review of the claims folder containing service and post-service medical records; the Veteran's actual medical history; and, the October 2007 examination of the Veteran. See Nieves-Rodrigues v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion, not the mere fact that the claims folder was reviewed). The examiner's opinion was well-reasoned because it was supported by adequate rationale explaining sleep apnea was only first noted in July 2007, after the Veteran's 2004 diagnosis with diabetes mellitus. In addition, the VA examiner's opinion explained that the Veteran's weight was higher prior to his 2004 diagnosis with diabetes mellitus, which was well-controlled with diet and medications, such that Dr. Bowlin's opinion that increased insulin caused greater fatty deposits in the neck contributing to sleep apnea was unsupported by the medical evidence. Thus, the Board finds the April 2010 VA examiner's opinion to be most persuasive, and notes that this is against the claim. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (it is the responsibility of the Board to assess the credibility and weight to be given the evidence) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). 

Consequently, the Board finds the evidence of record is against the award of service connection for the Veteran's sleep apnea as secondary to service- connected diabetes mellitus. As a preponderance of the evidence is against the award of service connection, the benefit-of-the-doubt doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991). 


ORDER

Entitlement to service connection for sleep apnea as secondary to diabetes mellitus type II with erectile dysfunction is denied. 


REMAND

The Veteran seeks service connection for hypertension claimed as secondary to service- connected diabetes mellitus type II with erectile dysfunction or to service- connected arteriosclerotic heart disease. As noted in the March 2010 Board remand, at no time has the Veteran contended that this disability is related to his military service.

The evidence shows that in April 2007, Dr. Bowlin related that the Veteran's hypertension was diagnosed prior to his diagnosis of diabetes mellitus, and that since the Veteran's diagnosis of diabetes mellitus, his hypertension had increased to the point that he required four medications. 

The Veteran was afforded a VA examination in October 2007. During this examination, it was noted that he had been hypertensive since 1995, and that control was somewhat erratic until his medications were changed several years ago. Diabetes since 2004 was noted. The diagnoses were essential hypertension, type II diabetes mellitus with neuropathy and erectile dysfunction, arteriosclerotic heart disease status- post coronary artery bypass graft and stents, and sleep apnea. The VA examiner opined, that in view of the fact that the Veteran was hypertensive for a number of years before he developed diabetes and in view of the fact that he did not have any evidence of renal dysfunction, it was unlikely that the diabetes aggravated or increased his manifestations of hypertension. He further opined that there was no basis for saying that hypertension was aggravated by coronary artery disease. It was noted that his blood pressure was apparently well-controlled on medication despite the coronary disease and coronary artery surgery. The VA examiner then opined that it was unlikely that the Veteran's manifestations of hypertension were aggravated or increased by the coronary artery disease. 

At his August 2009 hearing, the Veteran related that he was diagnosed with hypertension around 1997 or 1998. He also related that his hypertension was caused by or aggravated by his service- connected diabetes mellitus or heart disease. His wife believed that he had the onset of diabetes long before he was diagnosed, possibly up to ten years prior to his diagnosis, and that his diabetes contributed to or aggravated his hypertension. 

In March 2010 the Board noted that in formulating his opinion, the October 2007 VA examiner did not address why the need for increased medication to control the Veteran's hypertension would not represent an aggravation of the disability as postulated by Dr. Bowlin. As such, the Board remanded the claim for the VA examiner to address Dr. Bowlin's April 2007 statement. In addition, in the event that the examiner opined that the Veteran's hypertension was not aggravated by his service- connected diabetes mellitus or arteriosclerotic heart disease, the examiner was requested to provide a rationale. 

Following such remand, the examiner offered an April 2010 opinion in which he addressed Dr. Bowlin's letter. He then offered an opinion, with supporting rationale, that it was much less likely than not that the Veteran's hypertension was caused or aggravated by his diabetes mellitus. The examiner concluded that there was no evidence that the Veteran's diabetes mellitus caused his arteriosclerotic heart disease; however, the examiner did not address the question concerning whether the Veteran's arteriosclerotic heart disease caused or aggravated his hypertension. 

Thus, the Board's March 2010 remand instructions as to the issue of entitlement to service connection for hypertension as secondary to diabetes mellitus or arteriosclerotic heart disease have not been adequately completed. The Board is under a duty to ensure compliance with the terms of its prior remands. Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding compliance with remand instructions is neither optional nor discretionary). Accordingly, the Veteran's appeal must be remanded for further development. 


Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the October 2007 VA examiner for an addendum. The examiner should provide a rationale if he continues to opine that the Veteran's hypertension was not aggravated by the service-connected arteriosclerotic heart disease. 

If the examiner opines that the Veteran's hypertension was aggravated by his service- connected diabetes mellitus or arteriosclerotic heart disease, the examiner is requested to provide an opinion as to the approximate baseline level of severity of the hypertension before the onset of aggravation.

2. If the October 2007 VA examiner is unavailable, the Veteran should be afforded a VA examination to determine the etiology of his hypertension. All indicated tests and studies should be provided. The claims folder must be sent to the examiner for review; consideration of such should be reflected in the completed examination report or in an addendum. 

Following a review of the relevant medical evidence in the claims file, clinical evaluation and any tests that are deemed necessary, the examiner is requested to address the following question, providing a rationale for any opinion offered: 

Is it at least as likely as not (50 percent or greater degree of probability) that any hypertension present was caused or aggravated by the Veteran's service- connected diabetes mellitus or arteriosclerotic heart disease?

If the Veteran has hypertension that was aggravated by his service- connected diabetes mellitus or arteriosclerotic heart disease, the examiner is requested to provide an opinion as to approximate baseline level of severity of the hypertension before the onset of aggravation.

3. Review the examination report to ensure it contains the requested medical opinion in response to the questions posed. If not, take corrective action. 

4. Thereafter, readjudicate the claim. If the benefit sought on appeal remains denied, the Veteran and his representative should be issued a supplemental statement of the case, and given an opportunity to respond before the case is returned to the Board.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




______________________________________________
JOHN Z. JONES
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs