http://www.va.gov/vetapp16/Files5/1641964.txt

Citation Nr: 1641964 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 12-16 552A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUES

1. Entitlement to service connection for a heart disorder, claimed as ischemic heart disease, due to exposure to herbicides.

2. Entitlement to an initial rating higher than 30 percent for mood disorder with depressive features prior to June 6, 2016, and in excess of 70 percent thereafter.

3. Entitlement to a rating higher than 10 percent for residuals of knife wound to the right arm.

REPRESENTATION

Appellant represented by: Andrew Wener, Esq.

WITNESSES AT HEARING ON APPEAL

The Veteran, his spouse, and friend

ATTORNEY FOR THE BOARD

C. Biggins, Associate Counsel

INTRODUCTION

The Veteran served on active duty from May 1968 to May 1970, with service in the Republic of Vietnam from January 30 to August 14, 1969.

This case comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in February 2011, May 2011, and December 2011 by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

This appeal was previously before the Board in August 2015. The appeal was remanded for additional development. As discussed below, the requested development as to the Veteran's claims for entitlement to a higher rating for mood disorder with depressive features and entitlement to a rating higher than 10 percent for residuals of knife wound to the right arm were not substantially complied with and thus that portion of the Veteran's claim is not ready for appellate review. See Stegall v. West, 11 Vet. App. 268 (1998). However, the requested development as to the Veteran's claim for entitlement to service connection for ischemic heart disease was substantially complied with and thus, that claim is ready for appellate review. Id. 

The Board notes the August 2015 Board decision also remanded the claim of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). On remand an August 2016 rating decision granted entitlement to TDIU effective June 6, 2016. Thus, as the Veteran's claim was granted on remand, this claim is no longer before the Board and the issues are as noted on the cover page. 

In an August 2016 rating decision, the RO increased the Veteran's disability rating for his mood disorder from 30 percent disabling to 70 percent disabling effective June 6, 2016. As increased awards during the pendency of an appeal do not represent total grants of benefits, the Veteran's claim for a higher disability rating remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to an initial rating higher than 30 percent for mood disorder with depressive features prior to June 6, 2016 and in excess of 70 percent thereafter and entitlement to a rating higher than 10 percent for residuals of knife wound to the right arm are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

Heart disease was not incurred in service and is not otherwise related to service.

CONCLUSION OF LAW

The criteria for service connection of heart disease have not been met. 38 U.S.C.A. §§ 1110, 1112, 1131 (West 2014); 38 C.F.R. §§ 3.303 , 3.307, 3.309, 3.317 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2015), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. 

They also require VA to notify the claimant and the claimant's representative, if any, any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. 

The Board also notes the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103 (a) (West 2014), requires that notice to a claimant pursuant to the VCAA be provided 'at the time' that or 'immediately after' VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The record reflects that the Veteran was provided all required notice in a letter mailed in March 2011, prior to the initial adjudication of the claims.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A ; 38 C.F.R. § 3.159 (c). The record reflects that all available service treatment records and post-service medical records have been obtained. 

Additionally, in June 2015, the Veteran testified before the undersigned at a hearing held at the RO. A transcript of the hearing is of record.

The Veteran has not identified any outstanding evidence that could be obtained to substantiate this claim. The Board is also unaware of any such evidence. Therefore, the Board is also satisfied that VA has complied with its duty to assist the Veteran in the development of the facts pertinent to this claim.

Accordingly, the Board will address the merits of the claim.

II. General Legal Criteria 

Service connection may be established for disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. 

Service connection may be granted for any disease initially diagnosed after discharge, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests ischemic heart disease to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309(e). Ischemic heart disease includes, but is not limited to, acute, subacute myocardial infarction; atherosclerotic cardiovascular diseases, including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina. According to 38 C.F.R. § 3.309(e), Note 2, for the purposes of this section, the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify with the generally accepted medical definition of Ischemic heart disease.

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as opposed to merely isolated findings or a diagnosis including the word "chronic." When the fact of chronicity in service (or during any applicable presumptive period) is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b). The term "chronic disease" refers to those diseases, such organic disease of the nervous system, listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101 (3); 38 C.F.R. § 3.309 (a); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau, 492 F.3d 1372, 1376-77. 

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

III. Ischemic Heart Disease

The Veteran contends he has ischemic heart disease, which is a result of his active service to include exposure to herbicides. See September 2010 Veteran Statement. 

A review of the Veteran's service treatment records (STRs) show that he reported a normal heart at his May 1968 enlistment examination. In the associated report of medical history the Veteran denied having a palpitating or pounding heart. The Veteran's May 1970 separation examination and report of medical history indicated that the Veteran continued to deny any heart related symptoms.

Following his separation from service the Veteran first reported chest pain in March 1997. Specifically, a March 1997 VA treatment record noted the Veteran reported chest pains on and off for the past two days which had increased in severity that morning. The Veteran was provided with a chest x-ray which was negative for any abnormalities. Following this complaint of chest pain a September 1997 VA treatment record noted the Veteran's heart had normal rate and rhythm.

The Veteran continued to receive VA treatment for other disabilities during the course of the appeal. The Veteran's VA treatment records repeatedly indicated he had a normal heart with the exceptions of the symptoms noted below. 

The Veteran reported having a low heart beat in an April 2008 VA treatment record. A July 2010 VA treatment record noted the Veteran's report of heart palpations. An August 2010 report of hospitalization noted the Veteran was admitted August 28, 2010, and discharged a day later for chest pain.

A May 2012 VA general examination noted the Veteran had a cardiovascular condition which was specifically an artery and vein condition. The Board notes the Veteran is already service connected for bilateral vascular insufficiency, as such, this particular cardiovascular condition will not be discussed further. 

A November 2014 VA Treatment record noted the Veteran complained of pain to his head and chest and chronic pain to the right arm.

An October 2015 VA treatment record noted the Veteran denied chest pain, previous myocardial infarction or cardiac stents. The Veteran reported he did not have a history of CAD and was not seen by the cardiology department. The VA treatment provider stated "unsure of why there was any concern with his heart. Pt states he has had a stress test in the past and was told everything is normal."

The Board notes that the Veteran's VA treatment records indicate he takes aspirin daily as well as atenolol due to his blood pressure and his heart. While these medications are prescribed in relation to the Veteran's heart the record does not indicate that either medication was prescribed because of a diagnosed heart condition to include ischemic heart disease. 

In response to the August 2015 Board remand the Veteran was provided with a June 2016 VA examination. An in-person examination was performed and the Veteran's claims file was reviewed. The examiner noted the Veteran has not been previously diagnosed with any heart condition to include coronary artery disease and ischemic heart disease. The Veteran reported pain in his right arm which goes to his chest and then his head. The Veteran denied paroxysmal nocturnal dyspnea, orthopnea, and leg swelling. The examiner noted the Veteran had hypertension and hyperlipidemia. The examiner noted the Veteran has not had myocardial infarction, congestive heart failure, arrhythmia, heart valve condition, infectious heart condition, or pericardial adhesion. Following a physical examination the Veteran's heart rate and rhythm were noted as normal, his heart sounds were normal, and his lungs were clear. The Veteran's peripheral pulses, dorsalis pedis, and posterior tibial were noted as diminished. No evidence of cardiac hypertrophy or cardiac dilation was found. The examiner referenced an EKG from 2014 which showed sinus bradycardia. The examiner noted an interview based Mets test performed in June 2016 which showed fatigue due to musculoskeletal pains. The examiner noted the Veteran's limitation in Mets was due to degenerative arthritis. The examiner concluded that the Veteran did not have any heart conditions because he was asymptomatic aside from atypical pains radiating from right arm, to chest, to head. The examiner concluded there was no need for further testing because no heart disability was found. 

Upon consideration of the evidence, the Board finds service connection is not warranted for ischemic heart disease to include as due to herbicide exposure. 
The Veteran does not carry a diagnosis of heart disease. The service treatment and examination records reveal no history or finding suggestive of heart disease. Furthermore, a VA examiner has provided a probative opinion that the Veteran does not carry a diagnosis of heart disease. The August 2015 VA examiner considered the Veteran's heart symptoms to include his intermittent complaints of chest pain, fatigue, and shortness of breath and the January 2013 diagnosis of sinus bradycardia. The examiner found that these symptoms when considered with his other diagnosed conditions and previous test results do not indicate the presence of a heart condition. Thus, the Board finds the August 2015 VA examiner's opinion to be highly probative. As such, the Board finds a preponderance of the evidence shows the Veteran does not carry a diagnosis of heart disease. Because entitlement to service connection requires the presence of a current disability, the Board finds that service connection for a heart disorder has not been established. See Brammer v. Derwinski, 3 Vet. App. 223 (1992) (indicating that service connection presupposes a current diagnosis of the condition claimed). 

The Veteran contends that his heart disease may have resulted from Agent Orange exposure during service. Under 38 U.S.C.A. § 1116 (a)(2) and 38 C.F.R. §§ 3.307 (a)(6), 3.309(e), for Veterans who served in Vietnam between January 9, 1962, and May 7, 1975, certain diseases may be presumed to have resulted from exposure to certain herbicide agents such as Agent Orange. Although ischemic heart disease is included in the list of diseases presumptively due to Agent Orange exposure, the evidence does not show that the Veteran has a diagnosis of ischemic heart disease. Thus the Veteran is not entitled to service connection under this provision. 

Although the Veteran might believe that his heart disease is related to service the record does not suggest the Veteran, who is a layperson, is competent to determine such a relationship. In any event, the Veteran's lay opinion is less probative than the medical opinions against the claim. 

Accordingly, the claim must be denied. In reaching this decision, the Board has considered the doctrine of reasonable doubt but has determined that it is not applicable to this claim because the preponderance of the evidence is against the claim.

ORDER

Entitlement to service connection for a heart disorder, claimed as ischemic heart disease, due to exposure to herbicides is denied.

REMAND

I. Increased Rating for Mood Disorder with Depressive Features

The Veteran has informed VA that he has been awarded disability benefits from the Social Security Administration (SSA) due to a mental health condition. On remand, the RO must obtain the Veteran's SSA records. See Murincsak v. Derwinski, 2 Vet. App. 363, 369-70 (1992) (where VA has actual notice of the existence of records held by SSA which appear relevant to a pending claim, VA has a duty to assist by requesting those records).

II. Increased Rating for Residuals of Stab Wound to Right Arm

The August 2015 Board remand requested that the RO provide the Veteran with a new VA examination for his right arm disability. The examiner was to specifically address the Veteran's neurological symptoms to include itching in his right arm, right arm pain down to his elbow, and increased pain in his bicep when he tries to raise his arm.

In response to the August 2015 Board remand the Veteran was provided with a June 2016 VA examination. The Veteran reported flare-ups four to five times a week that last all night on and off. The Veteran stated the flare-ups occurred when he used his elbow too much. The Veteran reported functional loss in that he cannot use his right arm and has difficulty washing and shaving himself. The VA examiner performed range of motion testing and found that the Veteran's right arm range of motion was abnormal. The examiner concluded that the loss of range of motion did not contribute to functional loss. The examiner concluded that pain, weakness, fatigability or incoordination does not significantly limit functional ability with repeated use over time or during a flare-up. The examiner found that the Veteran's muscle strength is normal but that he had muscle atrophy. The examiner concluded the Veteran's muscle atrophy was not due to his claimed condition because "Veteran is 70 years old." The examiner found the Veteran's elbow disability does not impact his ability to perform any type of occupational task. The examiner added "It is conceivable that the patient's verbalized right elbow pain could further limit function (particularly after strenuous and repetitive activities). However, it is not feasible to attempt to express any of this in terms of additional limitation of motion, as these matters cannot be determined with any degree of medical certainty."

The Board finds the June 2016 VA examination inadequate. The August 2015 Board remand specifically requested that the examiner discuss the Veteran's neurological symptoms, however the June 2016 VA examiner did not include an adequate discussion of these symptoms. Additionally, the VA examiner found that the Veteran had normal muscle strength but experienced muscle atrophy which appears inconsistent. The examiner concluded that the Veteran's muscle atrophy was not due to his right arm condition because the Veteran was 70 years old. The rationale as to why the Veteran's right arm condition did not create muscle atrophy is not adequate as the examiner did not explain why the Veteran's age precludes the possibility of the muscle atrophy being a result of the Veteran's right arm disability. Moreover, the examiner found that pain, weakness, fatigability or incoordination did not significantly limit functional ability with repeated use over time or during a flare-up but later stated that it was "conceivable" that the Veteran's right arm condition could further limit function. These statements are inconsistent. Thus, a new VA examination is needed which addresses the entirety of the Veteran's right arm disability to include neurological symptoms and provides consistent statements regarding his functional loss. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Secure for the record from SSA copies of its determination on the Veteran's claim for SSA benefits (and all medical records considered in connection with such claim). 
 
2. The Veteran must be afforded the appropriate VA examination to determine the current severity of his service-connected residuals of a knife wound to the right arm. All electronic records must be made available to the examiner, and the examiner must specify in the examination report that these records have been reviewed. After conducting any appropriate and required testing, the examiner must describe in detail the current signs, symptoms, and manifestations of the service-connected residuals of knife wound to the right arm disability. Findings must include assessments of any associated weakness and neurological symptoms as objectively found. To the extent possible, the examiner should distinguish all symptomatology associated with the right arm residual knife wound disability from those attributable to any other service-connected or nonservice-connected disorder. 

The examiner must provide complete rationale for all conclusions reached. If an opinion cannot be made without resorting to mere speculation, this must also be fully explained.

3. The Veteran must be advised of the importance of reporting to the scheduled VA examination and of the possible adverse consequences of failing, without good cause, to so report. See 38 C.F.R. § 3.655 (2015). A copy of the notification letter advising the Veteran of the time, date, and location of the scheduled examination must be included in the claims folder and must reflect that it was sent to his last known address of record. If he fails to report, the claims folder must indicate whether the notification letter was returned as undeliverable.

4. Following completion of the above-requested development, the RO must readjudicate the Veteran's claims for increased evaluations for his service-connected mood disorder and right arm knife wound residuals. If any part of the decision remains adverse to the Veteran, he and his representative must be provided with a supplemental statement of the case and an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
L.M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs