Citation Nr: 1806339 
Decision Date: 01/03/18 Archive Date: 02/07/18

DOCKET NO. 16-34 771 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for headaches. 

2. Entitlement to service connection for eczema.

3. Entitlement to service connection for lipoma of skin and subcutaneous tissue.

4. Entitlement to service connection for colonic polyps.

5. Entitlement to service connection for osteopenia.

6. Entitlement to service connection for benign prostate hypertrophy (BPH).

7. Entitlement to service connection for a bilateral hip disability manifested by arthralgia claimed as pain on rotation. 

8. Entitlement to service connection for disability manifested by groin pain.

9. Entitlement to service connection for microvascular ischemic disorder also claimed as ischemic cerebrovascular accident (CVA).

10. Entitlement to service connection for major vascular neurocognitive disorder claimed as post traumatic stress disorder (PTSD), anxiety and depression.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

N. Rippel, Counsel


INTRODUCTION

The Veteran served on active duty from February 1964 to February 1966. He had service in the Republic of Vietnam, and is the recipient of a Combat Infantry Badge. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico. Service connection for a major vascular neurocognitive disorder claimed as PTSD, anxiety and depression was denied in a May 2014 rating decision, and the remaining claims were denied in an October 2015 rating decision. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2017).

The issues of service connection for lipoma of skin and subcutaneous tissue, a bilateral hip disability manifested by arthralgia claimed as pain on rotation, disability manifested by groin pain, headaches, eczema, colonic polyps, BPH, microvascular ischemic disorder also claimed as ischemic CVA, and major vascular neurocognitive disorder claimed as PTSD, anxiety and depression, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

Finally, the Veteran has appealed the February 2017 rating decision denying entitlement to service connection for hypertension and a rating in excess of 10 percent for bilateral hearing loss disability. He has elected to have a hearing at the RO before a Decision Review Officer (DRO) in relation to this appeal, and this is being scheduled by the RO. Because the RO is still taking action on these two claims, they are not yet before the Board, and will not be addressed in this decision. 


FINDINGS OF FACT

1. A radiological finding of osteopenia alone is not a disability for VA compensation purposes.

2. The competent and probative evidence received since the filing of this claim and during the pendency of the appeal does not demonstrate that the Veteran has a current disability associated with osteopenia.


CONCLUSION OF LAW

The criteria for service connection for osteopenia are not met. 38 U.S.C. §§ 1101, 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017).






REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duty to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017).

 A. Duty to Notify

The duty to assist was satisfied by July and August 2015 letters to the Veteran.

 B. Duty to Assist

The duty to assist includes assisting the claimant in the procurement of relevant records. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159 (c). The RO associated the Veteran's VA treatment records, service treatment records and identified private records with the claims file. No other relevant records have been identified and are outstanding. The Board finds VA has satisfied its duty to assist with the procurement of relevant records. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159 (c)(4). VA must provide a medical examination or obtain a medical opinion when there is: (1) competent evidence that the Veteran has a current disability, or persistent or recurrent symptoms of disability; (2) evidence establishing that the an event, injury, or disease occurred in service; (3) an indication that the current disability or symptoms may be associated with service; and (4) there is not sufficient medical evidence to make a decision on the claim. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

A VA examination under the standards of McLendon is not warranted with regard to claim the claim for osteopenia. As discussed below, there is no lay argument or medical evidence that indicates that a current disability, or persistent or recurrent symptoms of disability, is related to active duty. 

Since VA has obtained all relevant identified records and provided adequate medical examination where necessary, the duty to assist in this case is satisfied.

II. Service Connection 

Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) an in-service precipitating disease, injury, or event; and (3) a causal relationship, i.e., a nexus, between the current disability and the in-service event. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For a Veteran who served 90 days or more of active service after December 31, 1946, there is a presumption of service connection for certain chronic diseases if the disability is manifest to a compensable degree within one year of discharge from service. 38 C.F.R. §§ 3.307, 3.309. Osteopenia is not such an enumerated disease.

Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

A veteran who "during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service." 38 U.S.C. § 1116 (f) (2012); 38 C.F.R. § 3.307 (a)(6)(iii) (2017). 

In the case of veterans who have been exposed to an herbicide agent during active service, presumptive service connection is available for certain listed diseases. 38 C.F.R. § 3.309 (e) (2017). Relevant to the issue on appeal, osteopenia is not listed. The Secretary of the Department of Veterans Affairs has determined that there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 67 Fed. Reg. 42600-42608 (2002). Notwithstanding the foregoing, regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange).

In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The requirement for a current disability is satisfied if the disability is shown at any time subsequent to filing the claim, even if not shown currently. McLain v. Nicholson, 21 Vet. App. 319 (2007).

38 U.S.C. § 1154 (b) has been interpreted to reduce the evidentiary burden for combat veterans with respect to evidence of in-service incurrence or aggravation of an injury or disease. See Collette v. Brown, 82 F.3d 389, 392 (Fed.Cir.1996) ("Section 1154(b) does not create a statutory presumption that a combat veteran's alleged disease or injury is service-connected."). Inasmuch as the Veteran has combat service, 38 U.S.C.A. § 1154 (b) is for consideration.

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

A Veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. See Fagan v. Shinseki, 573 F.3d 1282, 1287-88 (2009); see also Walker v. Shinseki, 708 F.3d 1331, 1334 (Fed. Cir. 2013). In making its ultimate determination, the Board must give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. See Fagan, 573 F.3d at 1287 (quoting 38 U.S.C. § 5107 (b)).

The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show. The Veteran should not assume that the Board has overlooked pieces of evidence that are not specifically discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board provide reasons for rejecting evidence favorable to the Veteran.

 Osteopenia

The Veteran asserts that osteopenia is a disability that is somehow related to his service, to include his service in Vietnam. 

The evidence of record does not support diagnosis of a current disability in relation to this claim. Specifically the Veteran is not diagnosed with osteoporosis, but instead has a clinical finding of osteopenia. See e.g., March 2014 Problem List showing Osteopenia. This finding was noted in the record as based on a dual energy x-ray absorptiometry (DEXA) in 2008. See October 2012 treatment note showing no treatment for severe osteopenia in over a year, with last DEXA in 2008. Additionally, the Veteran has not asserted that the findings of osteopenia have worsened at any time during or in close proximity to the appellate period. 

The term "disability" means impairment in earning capacity resulting from diseases and injuries and their residual conditions. 38 C.F.R. § 4.1; see also Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991); Allen v. Brown, 7 Vet. App. 439 (1995). A symptom, without a diagnosed or identifiable underlying malady or condition, does not, in and of itself, constitute a "disability" for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282 (1999).

Osteopenia is a medical term to refer to any decrease in bone mass below normal. Dorland's Illustrated Medical Dictionary, 1336 (30th ed. 2003). There is no evidence in the record that the Veteran has ever been diagnosed with a disability due to or otherwise related to the osteopenia or that he has a disease associated with osteopenia. Test results are not, in and of themselves, disabilities. Cf. 61 Fed. Reg. 20440, 20,445 (May 7, 1996) (supplementary information preceding Final Rule amending the criteria for evaluating endocrine system disabilities indicates that diagnoses of hyperlipidemia, elevated triglycerides, and elevated cholesterol are actually laboratory test results, and are not, in and of themselves, disabilities).

The Veteran's service treatment records do not indicate osteopenia, or any bone abnormality. The record indicates osteopenia was first noted in 2008. The Veteran has not alleged otherwise. 

Here, even considering 1154(b), this claim must fail. The Veteran, as a layperson, is not competent to diagnose himself with osteopenia or any associated disability as such requires medical testing. The Board recognizes the Veteran's assertion that he has a disability due to his service as described. However, without evidence of a current disability associated with osteopenia, i.e., osteoporosis, the Board need not discuss further any theories of entitlement in this case. 

The applicable laws and regulations do not permit a grant of service connection for a clinical finding, absent a showing of related disability. Where the law and not the evidence is dispositive, the claim should be denied on the basis that there is an absence of legal merit or that the claimant lacks entitlement under the law. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


ORDER

Service connection for osteopenia is denied.


REMAND

Additional development is necessary in order to fulfill VA's duty to assist set forth at 38 C.F.R. § 3.159 regarding the remaining claims. 

In December 2017 argument, the Veteran's representative notes that the Veteran has not been afforded VA examination for the disabilities on appeal (with the exception of issue 10), and requests that this Vietnam combat Veteran, with presumptive exposure to Agent Orange, be afforded VA examination prior to Board review of his claims for which he has not yet been examined.

As to the claim for lipomas, the Veteran asserts that he has a disorder manifested by recurrent lipomas that is related to lipoma removal in service in August 1964. At that time, he was treated for an irritation fibroma-lip. In April 2013, he was treated for excision of lipoma of the left arm. A month earlier, he had presented with a painless slow-growing mass on the left arm present for several years. His recurring diagnosis in VA treatment records from that time is lipoma of other skin and subcutaneous tissue. 

The Veteran urges that the recent lipoma is related to the lipoma removed in service, or otherwise to his Vietnam service, to include presumed Agent Orange exposure. Examination is needed to assess the nature and etiology of the Veteran's lipoma of skin and subcutaneous tissue. 38 U.S.C. § 5103A; see Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991).

Moreover, as to the claims for service connection for a bilateral hip disability manifested by arthralgia claimed as pain on rotation, disability manifested by pain in groin, headaches, eczema, colonic polyps, BPH and microvascular ischemic disorder also claimed as ischemic CVA, there is competent evidence that the Veteran has a current disability, or persistent or recurrent symptoms of disability. The Veteran urges that these are due to service and specifically due to his presumed Agent Orange exposure while serving in combat in Vietnam. He argues thus that current disability or symptoms are associated with that combat and/or Agent Orange presumed exposure. As there is not sufficient medical evidence to make a decision on the claims, the Board will order remand in compliance with the aforementioned McLendon standards.

Additionally, the record reflects that he was found disabled by the Social Security Administration (SSA) in April 2000. Where there is actual notice to VA that the appellant is receiving disability benefits from SSA, VA has the duty to acquire a copy of the decision granting SSA disability benefits and the supporting medical documentation relied upon. Murincsac v. Derwinski, 2 Vet. App. 363 (1992). The AOJ should thus obtain the SSA information to include supporting medical documentation relied upon by SSA in making the disability benefits decision for this Veteran. As this information could potentially relate to the claim for major vascular neurocognitive disorder claimed as PTSD, anxiety and depression, that matter is also remanded.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain all SSA records related to that agency's disability benefits decision for this Veteran.

2. Arrange for the Veteran to have a VA examination to determine the nature and etiology of any lipoma of skin and subcutaneous tissue present during the appeal period.

Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file. Following a review of the claims file and physical examination of the Veteran, the examiner should address the following:

Whether the Veteran has lipoma of skin and subcutaneous tissue, and if present, whether it is related to service. The examiner should indicate whether it is as least as likely as not (50 percent probability or more) that any lipoma of skin and subcutaneous tissue is related to service, including the in-service removal of fibroma-lip in 1964 or his presumed exposure to herbicides in Vietnam. 

3. Arrange for the Veteran to have a VA examination to determine the nature and etiology of any bilateral hip disability manifested by arthralgia claimed as pain on rotation, disability manifested by pain in groin, headaches, eczema, colonic polyps, BPH and microvascular ischemic disorder also claimed as ischemic CVA present during the appeal period.

Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file. Following a review of the claims file and physical examination of the Veteran, the examiner should address the following:

Whether the Veteran has bilateral hip disability manifested by arthralgia claimed as pain on rotation, disability manifested by pain in groin, headaches, eczema, colonic polyps, BPH and microvascular ischemic disorder also claimed as ischemic CVA, and if present, whether each disorder is related to service. Specifically, the VA examiner should provide an opinion whether it is as likely as not (a 50 percent probability or more) that any diagnosed bilateral hip disability manifested by arthralgia claimed as pain on rotation, disability manifested by pain in groin, headaches, eczema, colonic polyps, BPH and microvascular ischemic disorder also claimed as ischemic CVA is related to his active service, including his presumed exposure to herbicides in Vietnam.

4. If, upon completion of the above action, any benefit sought remains denied, the case should be returned to the Board after compliance with requisite appellate procedures.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
J. W. FRANCIS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs