﻿Citation Nr: AXXXXXXXX
Decision Date: 02/22/19 Archive Date: 02/21/19

DOCKET NO. 181210-1384
DATE: February 22, 2019

ORDER

Entitlement to a disability rating higher than 70 percent for posttraumatic stress disorder (PTSD) is denied.

Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) is granted.

FINDINGS OF FACT

1. The Veteran’s PTSD is not shown to be productive of a disability picture that more nearly approximates total occupational and social impairment.

2. Resolving all doubt in the Veteran’s favor, the probative evidence of record supports a finding that the Veteran has been unable to secure or follow substantially gainful employment as a result of his service-connected PTSD. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to a disability rating higher than 70 percent for PTSD have not been satisfied. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.130, Diagnostic Code 9411.

2. The criteria for entitlement to a total disability rating based on individual unemployability due to service-connected disability have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1965 to August 1967.

1. Entitlement to a rating higher than 70 percent for PTSD

The Veteran contends that he is entitled to a disability rating higher than 70 percent for his PTSD.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person’s ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found – a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran’s service-connected psychiatric disorder is rated under Diagnostic Codes 9411 which utilizes General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130. Under that Formula, a 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships. 

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of closest relatives, own occupation, or own name. 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders, Diagnostic Code 9413.

As the United States Court of Appeals for the Federal Circuit recently explained, evaluation under 38 C.F.R. § 4.130 is “symptom-driven,” meaning that “symptomatology should be the fact-finder’s primary focus when deciding entitlement to a given disability rating” under that regulation. Vazquez–Claudio v. Shinseki, 713 F.3d 112, 116–17 (Fed.Cir.2013). The symptoms listed are not exhaustive, but rather “serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering “not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas” - i.e., “the regulation... requires an ultimate factual conclusion as to the Veteran’s level of impairment in ‘most areas.’” Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, Diagnostic Code 9413. 

Further, when evaluating a mental disorder, the Board must consider the “frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission,” and must also “assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination.” 38 C.F.R. § 4.126(a). 

Global Assessment of Functioning (GAF) scores are a scale reflecting the “psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.” See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) [citing the American Psychiatric Association’s DIAGNOSTIC AND STATISTICAL MANUAL FOR MENTAL DISORDERS, Fourth Edition (DSM-IV), p. 32].

GAF scores ranging between 71 and 80 reflect that if symptoms are present they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument; no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but is generally able to function “pretty well,” and has some meaningful interpersonal relationships. Scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). See 38 C.F.R. § 4.130 [incorporating by reference the VA’s adoption of the DSM-IV, for rating purposes].

VA implemented DSM-5, effective August 4, 2014, and the Secretary, VA, determined that DSM-5 applies to claims certified to the Board after August 4, 2014. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). As the Veteran’s increased rating claim was originally certified to the Board after August 4, 2014, the DSM-5 is applicable to this case. 

Effective August 4, 2014, VA also amended the regulations regarding the evaluation of mental disorders by removing outdated references to DSM-IV. The amendments replace those references with references to the recently updated DSM-5. However, according to DSM-5, clinicians do not typically assess GAF scores. The DSM-5 introduction states that it was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, the suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.

On VA examination in February 2012, the examiner provided a diagnosis of cannabis abuse, bereavement, and personality disorder not otherwise specified. Post military the Veteran married his first spouse in 1968. They had three children. The marriage ended in divorce because according to the Veteran she would not put up with him not working. He later became employed as a letter carrier by USPS for approximately 18 months and then he just stopped working. 

Reportedly, he was fired for interfering in a Postal investigation on drug use. The Veteran remarried and lived with his second wife until 2010 when she passed away. The had four children some of whom continued to live with the Veteran, including his 29-year-old son and his girlfriend. He reported one child was taken from his home when the child was 15 secondary to being unfit as a parent. Educationally, the Veteran repeated the eighth grade and related multiple disciplinary problems in school. He eventually dropped out in 11th grade and completed his high school degree in night school at the age of 20. The examiner determined that the Veteran’s mental disability caused occupational and social impairment with reduced reliability and productivity. The Veteran reported recurrent and distressing recollections, feeling of detachment or estrangement from others, difficulty concentrating, anxiety, impairment of short and long-term memory, and disturbances of motivation and mood. The examiner determined that the Veteran was capable of managing his financial affairs. 

VA treatment records in 2013, noted that the Veteran’s psychiatric symptoms were judged to be severe impacting both his social functioning and his occupational functioning. The Veteran endorsed Interpersonal difficulties particularly with respect to emotional intimacy. No cognitive abnormalities were noted. He consistently denied suicidal or homicidal ideation. Subsequent treatment records show continued treatment for PTSD with similar clinical findings. 

An April 2016 VA Disability Benefits Questionnaire for PTSD, completed by a psychologist noted a diagnosis of PTSD with cannabis abuse disorder. The examiner reported occupational and social impairment with reduced reliability and productivity. The Veteran reported recurrent and distressing recollections of the event, including images, thoughts or perceptions. He exhibited psychological reactivity on exposure to internal or external cues that symbolized or resembled an aspect of the traumatic event, along with to avoidance of stimuli associated with the trauma. The Veteran avoided activities, places, or people that aroused recollections of the trauma. There was markedly diminished interest or participation in significant activities, as well as feelings of detachment or estrangement from others. He related a sense of foreshortened future. The Veteran had difficulty falling or staying asleep. He described difficulty concentrating. The examiner found that the Veteran’s psychiatric symptoms were productive of depressed mood, anxiety, mild memory loss (such as forgetting names, directions, or recent events), impaired judgment, impaired abstract thinking, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances (including work or a work like setting), and inability to establish and maintain effective relationships. The examiner noted avoidance of emotions, withdrawal and isolation. He related loss of pleasure or motivation with regard to activities. He relied on his four children and brother for social interactions, but was too anxious to broaden social connections. He had been a stay at hoe dad for decades and reported not working at that time due to his advanced age. The examiner determined that the Veteran was capable of managing his financial affairs.

On VA examination in September 2016, the examiner found that the Veteran met the DSM-5 criteria for a diagnosis of PTSD with cannabis use disorder in remission. The examiner found that there was occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood. The Veteran reported recurrent distressing dreams. The examiner also noted avoidance of or efforts to avoid external reminders that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic event. The Veteran described markedly diminished interest in participating in significant activities. He reported having feelings of detachment or estrangement from others, hypervigilance, problems with concentration, sleep disturbance, depressed mood, anxiety, chronic sleep impairment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances (including work or a worklike setting). 

Occupationally, the Veteran worked with his father in an auto mechanic garage when he was younger. In 1963 to 1966 he worked for an HVAC business as an apprentice. After the service, he reportedly worked at the Post Office for 1.5 years until he was let go due to behavioral problems. He reported threatening his supervisor and related having interfered with a criminal investigation of another employee. He related feeling frightened and incapable of learning anything new, such as cooking different dishes or finding out more about managing his bank account and avoiding overdraft fees handling, because his wife did everything and he had always taken the easy way out. 

Socially, the Veteran reported he rarely left the house and did not travel without a family member, due in part, to lack of transportation. He had limited interaction with the public as he would find himself saying in inappropriate statements to others. He was capable of maintaining meaningful relationships and he could engage in good conversation. The Veteran’s daughter handled his finances because he was too unorganized. 

Examination of the Veteran showed that he was oriented to person, place, and time. He had good eye contact was described as cooperative with good rapport. His speech was normal for rhythm, rate, and volume. The Veteran was at times tearful and bright at others. His affect was stable and congruent with mood. The Veteran denied having any suicidal or homicidal ideations. His thought processes were linear, logical and goal-directed. Insight, judgment and reasoning appeared intact. There was no evidence of any perceptual disturbances, paranoia, or delusional thinking. The examiner found that the Veteran was not capable of managing his financial affairs. 

Based on the evidence of record, the Board finds that the criteria for a 100 rating are not met, as the evidence does not reflect total social and occupational impairment. Total social impairment is not demonstrated as the Veteran reported having maintained a mostly stable relationship with his second spouse, brother and children. With respect the Veteran’s employment history post-service discharge, while he has not worked in decades, it is also apparent that this was initially, at least in part, a conscious decision between the Veteran and his spouse that he should stay home and raise their seven children. 

More importantly, none of the examiners or treating clinicians who have examined the Veteran determined that his psychiatric symptoms were productive of total social and occupational impairment. At most, VA examiners have found that the Veteran’s psychiatric disorder was productive of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood.

In sum, the Veteran has denied homicidal or suicidal ideation, and was consistently found not to be a danger to himself or others. While the Veteran complained of depression, memory and concentration problems, nightmares, impaired sleep, and irritability, the preponderance of the probative evidence is against a finding that the Veteran’s psychiatric symptomatology more nearly approximated total occupational and social impairment, such that a schedular 100 percent rating is warranted. The Veteran’s own statements about his PTSD do not clearly support the 100 percent finding. 

The Board has considered the contentions from the Veteran regarding the severity of his psychiatric disorder; however, the objective clinical findings outweigh the Veteran’s subjective assertions as to whether he has total social and occupational impairment due to his psychiatric disorder. The Veteran’s symptoms reflect no more than moderately severe difficulty in social, occupational, or school functioning. As such, the 70 percent rating adequately compensates the Veteran for his symptomatology.

In absence of evidence of total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); and disorientation to time or place, or similar symptomatology of such frequency, duration, or severity, the Board finds that the criteria for a 100 percent rating have not been demonstrated. There is no evidence of memory loss for names of close relatives, or his own name. The Veteran has not been found to be disoriented. The evidence does not show persistent delusions or hallucinations. The evidence does not show gross inappropriate behavior or gross impairment in communication. His thought processes have not demonstrated gross impairment. Therefore, the Board finds that the evidence does not more nearly approximate the criteria for a rating of 100 percent and a rating greater than 70 percent is denied. Accordingly, a rating in excess of 70 percent disability rating is denied. 38 U.S.C. § 5107 (b); Gilbert, 1 Vet. App. at 55-56.

2. Entitlement to a TDIU

The Veteran contends that his service-connected PTSD prevents him from obtaining gainful employment. 

In order to establish a TDIU, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is “whether the Veteran’s service connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran’s level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Under the applicable criteria, a TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more service-connected disabilities, provided that one of those disabilities is ratable 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16 (a). 

Here the criteria of 38 C.F.R. § 4.16(a) have been met.

The evidence is in equipoise as to whether the Veteran has been unable to secure or follow a substantially gainful occupation as a result of his service-connected psychiatric disorder. 

The Veteran stopped working in 1984/85 due apparently to behavioral problems, including interference with a criminal investigation. He also related having threatened his supervisor. 

VA examiners in February 2012, April 2016 and September 2016, failed to specify how the Veteran’s psychiatric symptoms affected his employability. The VA examiner in September 2016 noted that the Veteran had difficulty in establishing and maintaining effective work and social relationships, and adapting to stressful circumstances, including work or a worklike setting. It was noted that he was fearful of learning new skills. The Veteran rarely left the house and did not travel without a family member, due in part, to lack of transportation. He had limited interaction with the public as he would find himself interacting in an inappropriate manner with others. The examiner found that the Veteran was not capable of managing his financial affairs and his daughter paid his bills for him. His treating mental health providers have described the Veteran’s psychiatric symptoms as severe. Considering the impact of the Veteran’s psychiatric symptoms on his interpersonal skills, his inability to learn new tasks, his occupational and educational background, as well as the fact that when the Veteran was most recently examined in 2016 he was found incapable of handling his own finances, the Board finds that the Veteran’s PTSD renders him unemployable. 

The Board also notes that while SSA decisions regarding unemployability are not controlling for VA, they are relevant and should be weighed and evaluated. See Collier v. Derwinski, 1 Vet. App. 413, 417 (1991); Murincsak v. Derwinski, 2 Vet. App. 363, 370 (1992). Throughout the appeal the Veteran has been in receipt of Social Security disability benefits. However, as the records are not available, the basis for a finding of disability is unclear. 

Nonetheless, the Board finds that the weight of the evidence supports a finding that the Veteran’s psychiatric symptoms alone, would more likely than not render the Veteran incapable of more than marginal employment in any type of work setting, whether physical or sedentary. Ortiz-Valles v. McDonald, 28 Vet. App. 65, 72 (2016). 

(Continued on the next page)

 

Thus, resolving reasonable doubt in his favor and find that he has been unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. A TDIU is granted.

 

JOHN J. CROWLEY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD T. Azizi-Barcelo, Counsel